Judge Marshall
delivered the Opinion of the Court.
In January, 1831, William Oldham & Co. purchased from Thomas Blackwell and A. G. Daniel, at New Orleans, nine slaves, at the price of four thousand two hundred dollars; for which they paid twelve hundred dollars in a few days, and gave their obligation to discharge and take up a certain bill of exchange for three thousand dollars, which was to fall due on the 29th of March following. . *
A bill of sale was executed for the slaves, warranting them all to “be sound and healthy in body and mind (except Jerry who has the dysentery,” and another, whose defect is mentioned.) In a short time after the sale, Jerry was discovered by the vendees, to be considerably diseased, and after lingering a few weeks, he died of a complication of diseases, some of which appear to have been of long standing. The other slaves were retained, or more probably sold, by Oldham & Co. who having discovered the condition of Jerry, refused to pay the whole amount of the bill of exchange, but paid $¡2,450 on it, and retained in their hands ‡550 to cover their estimate of Jerry’s price, and the expenses incurred on account of his sickness and death.
After the return of the parties to Kentucky, Blackwell and Daniel obtained a judgment upon the obligation of the purchasers to take up the bill of exchange; and to enjoin that judgment, the present bill was filed by Oldham & Co. alleging a fraudulent misrepresentation on the part of the vendors, as to the disease of Jerry, when in fact they knew, but fraudulently concealed that he was and had been diseased of a decayed liver, at the time of the sale and before he left Kentucky, of which disease he died. In an amended bill, they state that *196 judgment had been recovered against them for the full amount of their obligation, without crediting the sum of $2,450 paid on the bill of exchange, which the defendant had refused to credit, and they pray relief as to that* On the hearing, the injunction was perpetuated as to the entire judgment, and Blackwell and Daniel seek to reverse the decree.
A Court ofEquity has no jurisfor'afraudin^he Sh « ]f sl£jves’ modities, where the recovery of damages is the sole object, it belongs to a jury to assess the dam ages, and the reSvely at lawdU' Upon a bill to. rescind the contract ire toto, for fraud, chancery will afford relief. But that cannot be, where the comp.’t has, by any means, affirmed the contract, or put it out of his power to restore the put-chase.
Nor will a bill lie, unless the cir cumstances are peculiar, if at all, for a partial rescission of an entire contract—as, to rescind the sale of one slave, sold with several others, for a gross sum.forthewhole
We deem it unnecessary to state our opinion as to the effect of the proof in relation to the alleged fraud, or extent of the injury sustained by the complainants *n consequence of it. As we have, upon mature con-; sideration, come to the conclusion that, in regard to so much of the case as relates to the alleged fraud and con- . . „ sequent injury, there is no ground tor the jurisdiction of a Court of Equity.
, -n . . , . - , lhis is not a bill to rescind the entire contract of sale, uPon a proper case, the Court would have undoubted jurisdiction. And if it were, the complainants are not in a condition to ask a rescission of the entire contract, because they have affirmed it, after discovering the fraud, by paying a great part of the price, and by using or selling all the. slaves except Jerry. They have thus put it out of their power, and out of the pow-. er of the, Court, to rescind the contract upon equitable terms; and the Court could not, even if it were asked to do so, rescind the contract as to Jerry alone, because the contract and sale were in gross, and there is no, means of ascertaining the price at which Jerry was estimated in the sale; and because it must be an extreme case, if any could arise, in which a Court of Equity could or would partially rescind ap entire contract of this character.
But the bill does not go for a rescission either partial op total. Its real object is to liquidate the damages sustained in consequence of the fraud affecting partially the subject of the contract, and to set them off against the judgment; at law. And this a Court of Equity will not, and cannot do, unless, by reason of some collateral circumstance, as insolvency, or nonresidence of the party, the remedy at law is inefficient or impracticable, or unless the damages have been adjusted by the parties and. *197 agreed to be deducted from the price. This principle has been repeatedly asserted and acted on by this Court; and we perceive no ground for departing from it in this case, without disavowing its authority, or virtually defeating its operation. There is no suggestion of any obstacle, or difficulty at law, or insufficiency in the plain legal remedy; and therefore, as to this matter, the Court of Equity had no jurisdiction. Hardwick vs. Forbes' adm’r. 1 Bibb, 212; Watts & Garraty vs. Hunn, 4 Litt. 267; Kendrick vs. Arnold, 4 Bibb 235; Caldwell vs. Hawkins' adm'r. 1 Litt. 213.
Sale of 9 slaves in one lot, and an obligation for part of the price which was after-wards paid, except the value of one slave that was diseased, which is withheld. Vendor re cpvers a judg’t on the obligation for the full a-amount;and the purchaser fdes a bill for an injunction, charging (X) a fraud in the sale of the diseased slave, and (2) the omis sionto give credit for the payment. As to the latter, the chancellor may relieve; and it was. .contended, that when he thus has. jurisdiction of the subject matter of-the contract, he should dispose of the whole case: hut held, that as the damages for the alleged fraud,' were unliquidated, and there is no special ground, shown for the jurisdiction over-that branch ol’the. case, thq. remedy is af Iaiy,
It is argued that, because the Court has jurisdiction of the case so far as to allow or enforce the credits claimed on account of the partial payment of the bill of exchange, it may also, go on to ascertain and set off the damages arising from the fraud. It might he, that if the damages had been ascertained by a judgment at law, the Court of Chancery, being in possession of the case for the purpose of setting off the partial payments, would also proceed to set off the judgment for damages. But the difficulty here is, that there is no judgment, nor other liquidation of the damages; and on the principle of the cases above referred to, a Court of Equity has no jurisdiction to ascertain and decree damages arising from fraud in the sale of a slave or other chattel, where the contract is affirmed by the vendee, except under the peculiar circumstances which have been referred to. They are prevented from doing it by a want of power over the subject; and the mere possession of a case between the parties cannot give this power.
We are therefore of opinion, that the Circuit Court erred in perpetuating the injunction as to the whole amount of the judgment at law; and in not dissolving it as to the sum of five hundred and fifty dollars enjoined on account of the alleged fraud.
The decree is therefore reversed, and the cause remanded, with directions to dissolve the injunction as to the above named sum; with damages, and to perpetuate it as to the residue of the judgment.