JABEZ C. WOODMAN *versus* JOSEPH FREEMAN,
                                        ABIEZER S. FREEMAN,
                                        PETER HASKELL, JR.
                                        REUBEN B. DUNN, *and*
                                        DANIEL CUMMINGS.

A court of equity may rescind a conveyance of land or a contract therefor, which has been procured by fraud, when a proper case for it is presented. But no such relief can be given, where no conveyance, or written or other legal contract or bargain for the conveyance, of any part of the land by the defendant to the plaintiff is proved to have existed at any time.

One who has been induced to purchase land of another and to pay him for it by the fraudulent representations of a third person, interested to effect such sale, cannot, in a court of equity, recover the amount so paid of such third person, and require him to receive a conveyance of the land.

The jurisdiction of the Court to give relief in equity by compensation in damages, where the facts do not authorize the Court to give any other relief is considered, and conclusions drawn in manner following : —

The cases which declare, that the Court "had an undoubted jurisdiction to relieve against every species of fraud," must be received with some limitation.

If fraudulent representations have been made respecting personal property or personal rights, relief for injuries thereby occasioned can only be obtained by an action at law ; and a court of equity will not entertain jurisdiction.

That the Court may rightfully entertain jurisdiction in equity, and may give such relief as is incidental to other relief granted, to make it complete, in the following cases : —

1. In cases of fraud and mistake, when there does not appear to be a plain and adequate remedy at law.

2. When relief against a forfeiture or penalty is sought and obtained.

3. When a contract or conveyance is properly set aside or rescinded under circumstances requiring that some compensation should be made to one of the parties, to adjust the equities, and do complete justice.

4. When specific performance is sought and decreed, in whole or in part.

5. When specific performance ought to have been, and could have been decreed upon the state of facts existing when the bill was filed, but cannot be decreed on a hearing of the cause, because the defendant, pending the suit, has voluntarily disenabled himself to make a conveyance.

6. When by a bill of discovery and relief the discovery sought is obtained, the Court having acquired jurisdiction of the case for the discovery, will retain it and give relief, and if necessary, by an assessment of damages. But the Court can give relief as consequent upon discovery, only upon a bill for discovery and relief, containing in substance a statement of the facts, a discovery of which is desired ; an averment that they rest in the knowledge of the defendant alone and are incapable of other proof; and that a discovery of them is material to enable the plaintiff to obtain relief.

7. When necessary to adjust the accounts, claims and equities between a *cestui que trust* and a trustee, chargeable for delinquency or unfaithfulness.

8. When necessary for the adjustment of equities between mortgagor and mortgagee.

9. When necessary for the liquidation and settlement of the concerns of a partnership, when one of the partners is chargeable with misconduct or fraud.

10. When necessary to give complete relief in cases of nuisance.

In a court of equity objections to the jurisdiction of that Court, in the case before it, may be taken at the hearing.

THE facts in this case, so far as they are pertinent to the question on which the decision is founded, sufficiently appear in the opinion of the Court.

It was agreed by the parties that the case should be argued in writing.

As the arguments approach to nearly eight hundred pages, the space required for them is, obviously, too great for their admission into a volume of Reports.

*S. Fessenden, Howard & Shepley,* and *Cooper & Robey* were said at the close of the opening argument for the plaintiff to have been counsel for him; but both the opening argument and the reply appear to have been made by the plaintiff himself, who is a counselor at law.

*Daveis & Son, W. P. Fessenden,* and *Jacob Hill* for the defendants.

· The counsel for the defendants, in support of their point, that the Court, as a court of equity, had no jurisdiction, cited *Russell* v. *Clark's Ex'ors,* 7 Cranch, 69; *Todd* v. *Gee,* 17 Vesey, 277; *Jenkins* v. *Parkinson,* 2 Mylne & Keene, 559; *Tenham* v. *May,* 13 Price, 749; 1 Sug. Vend. & Pur. (6th Am. Ed.) 286; 2 Story's Eq. § 794, 796, 799; *Russ* v. *Wilson,* 9 Shepl. 207; and *Ferson* v. *Sanger,* in the U. S. Circuit Court for the Maine District, not yet reported.

The opinion of the Court, WHITMAN C. J. not sitting in the case, and taking no part in the decision, was drawn up and delivered at the April Term, 1847, by

SHEPLEY J. — This suit in equity is presented upon bill, answers, and proof. The plaintiff seeks relief from the effects of an executed contract; made during the year 1835, for the purchase and sale of an undivided portion of a tract of land situated in the town of Carroll in the State of New Hampshire. The printed record of the case is voluminous, containing three hundred and twenty octavo pages. The case has been argued very elaborately and with great research. The opening argument for the plaintiff has been presented in a printed volume containing more than four hundred and twenty octavo pages; the closing one containing one hundred and seventy-two written pages. The counsel for the defend-

ants have presented arguments, containing one hundred and eighty-two written pages.

The outlines and general aspect of the case may be briefly exhibited. It appears, that Alfred W. Haven and Lory Odell by a contract in writing had agreed to convey to Andrew Gilman a tract of land, containing twelve thousand or more acres, at the price of four dollars per acre. Gilman engaged by a written contract to convey the same to Abiezer S. Freeman and Daniel Cummings at the price of six dollars per acre, provided they elected to purchase within a short time. Several other persons were interested with Gilman in the sale of the lands; and the defendants, Joseph Freeman and Peter Haskell, Jr. appear to have been connected with A. S. Freeman and Cummings in the purchase and sale of them. Ira P. Woodbury was employed by some of these defendants to assist them in effecting a sale. They appear to have proceeded to Portland for that purpose, where, on or about the first day of August, 1835, a conditional contract for the sale of them was drawn, by which A. S. Freeman and Cummings proposed to sell to those persons, who should become parties to it as purchasers, on condition, that there should be found on examination or exploration, as it was called, a standing growth of pine timber sufficient to make seven thousand feet of merchantable boards to the acre, and also a certain quantity of spruce timber not ascertained by the proof; and that the average distance to haul the same to water, suitable to float it, should not exceed two and a half miles. The exploration was to be made by a person to be selected by those, who should become parties to the contract as purchasers. It was signed by Oliver B. Dorrance by subscribing it "O. B. Dorrance & als." explained by him as including Marshall French, as the purchaser of one fourth part; and by the following persons as purchasers; Nathaniel Crockett of one fourth, Ward and Willis of three sixteenths, Samuel Pearson of one sixteenth, and Enoch Gammon and Hiram H. Dow of one eighth each. Allen Kent appears to have been selected by Dorrance and French with the approbation of part, if not of the whole of

the other proposed purchasers, to make the exploration. This duty he performed to a certain extent, being accompanied by the Freemans and Haskell. It does not appear, that he made any written report of the result of his exploration, but the information obtained from him appears to have been so favorable as to induce those, who had signed the conditional contract, to believe, that it had become absolute, and to sign the same anew, agreeing to become the purchasers according to their respective proportions, at the price of seven dollars per acre. Thereupon A. S. Freeman and Cummings appear to have notified Gilman of their election to purchase at the price of six dollars per acre, and of their readiness to make the payments and required securities at Portland. This was to have been done, probably, on August 17, 1835, as notes given for the purchase money in part were to be on interest from that day, although not made until the twenty-first day of August. Conveyances and notes were accordingly prepared to be signed and executed by the respective parties, with the exception of Dorrance and French, who appear to have made certain arrangements, by which performance on their part was not required. Ward and Willis, perceiving by an inspection of the papers, that Dorrance and French were not to become purchasers, demanded an explanation, which was not made in a manner satisfactory to them, and they refused in the presence of Crockett to become purchasers of any portion; and they also communicated this, as one of them states, to Dow; and Crockett and Dow neglected or refused to perform the contract on their part. It then became necessary for those, who had agreed to purchase of Gilman, if they would perform their contract with him, to procure other persons to take these portions, or to become themselves the purchasers of them. The plaintiff was induced to become a purchaser jointly with Joseph Freeman, of one eighth part. Haskell sold his interest to Cummings, who sold the same to Reuben B. Dunn, who became a purchaser jointly with Job Haskell of three sixteenth parts. Haven, Odell, and Mark W. Pierce conveyed the lands

to Gilman who by conveyances bearing date on August 21, 1835, conveyed the same as follows : —

To the plaintiff and Joseph Freeman, one eighth part.

To Reuben B. Dunn and Job Haskell, three sixteenth parts.

To Samuel Pearson, one sixteenth part.

To Enoch Gammon, one eighth part.

To Joseph Freeman, one fourth part.

To Joseph Freeman, A. S. Freeman, Daniel Cummings and Reuben B. Dunn, one fourth part. The purchasers made their promissory notes for the amount not paid in cash, payable to Gilman or order. Several of these notes, including all those made by the plaintiff and Joseph Freeman, jointly, were immediately indorsed by Gilman and delivered to Haven and Odell in part payment for the same lands. The plaintiff and Joseph Freeman, to secure the payment of the notes made by them, conveyed their proportion of the lands to Haven and Odell in mortgage.

The bill alleges, that the plaintiff was induced to make that purchase with Joseph Freeman by certain fraudulent acts and representations of the defendants set forth. There is no allegation of fraud or misconduct made in the bill against either Haven, Odell, or Gilman ; and neither of them is made a party to the suit. There is no proof, that either of the defendants received at any time any portion of the purchase money paid, or of the securities made for it by the plaintiff and Joseph Freeman.

The prayer of the bill is, " that the defendants may be compelled and required to take up and procure to be cancelled the remainder of the notes aforesaid given by the said Joseph and your orator ;" " that the land may be set free and discharged from the aforesaid mortgage ;" that the defendants, " may repay unto your orator all of one half of the seven notes which your orator and Joseph Freeman gave said Andrew Gilman," together with interest and sums paid for taxes assessed upon the land ; " and receive from your orator such conveyance of said sixteenth part of said land," as may be directed ; and for

Woodman v. Freeman.

further and other relief " in the premises by compensation in damages or otherwise."

The first question presented for consideration is, whether a court of equity can give relief, even if the alleged fraud should, on examination, appear to be established. The relief prayed for will be noticed under two aspects of the case.

The first mode of relief proposed is in substance, that the Court should decree, that the defendants pay and cause to be discharged all incumbrances upon the land, repay to the plaintiff the amount which he has paid on account of it, and receive from him a conveyance of his title to it. The second is, that the defendants may be decreed to make compensation in damages for the loss occasioned by their fraudulent acts and representations.

A court of equity may rescind a conveyance or contract, which has been procured by fraud, when a proper case for it is presented. No such relief can however be given in this case, for no written or other legal contract or bargain for the conveyance of any part of the tract of land by the defendants, or either of them, to the plaintiff is proved to have existed at any time. The mode, in which the plaintiff became the purchaser of a part is stated in the bill to have been, that, " he was induced to and did then and there join in the purchase of a portion of said land, and by the appointment of these defendants, received his deed in conjunction with the said Joseph Freeman, in common and undivided, of one eighth part of the aforesaid land from Andrew Gilman, who took a deed from said Haven and Odell." The only mode, in which the defendants can be regarded as in effect the vendors of the land, is, that they undertook, by virtue of the right of preemption secured to them by the contract of Gilman with A. S. Freeman and Cummings, to assure the plaintiff, that he might become a purchaser of a part at the price stated by them. The Court cannot decree a restoration to the plaintiff of any money paid by him, for neither of the defendants appears now to have, or to have had at any time, any money paid by him on account of the land. The plaintiff contends, that

the amount paid or secured by him, was for their benefit. If so paid in any legal sense of the terms, there would seem to be an adequate remedy at law. But the securities were made as the consideration for land conveyed to the plaintiff, for his own use and benefit. They could not be considered as made for the benefit of the defendants in any other sense, than as operating to occasion a sale of the whole tract, by which sale of the whole tract the defendants received a benefit secured to them by other purchasers. The doctrine necessary to be maintained to obtain relief in the mode first proposed, may be more clearly comprehended by a statement of it in the form of a definite proposition ; viz :— one, who is induced to purchase lands of another and to pay him for them by the fraudulent representations of a third person interested to effect such sale, may in equity recover the amount so paid of such third person and require him to receive a conveyance of the lands. The plaintiff relies upon the cases, *Daniel* v. *Mitchell,* 1 Story's R. 172 ; *Doggett* v. *Emerson,* 3 id. 700 ; *Warner* v. *Daniels,* Law Rep. vol. 9, No. 4, and *Mason* v. *Crosby,* decided in the Circuit Court of the United States, in the Maine District, not yet reported. But these cases, so far as they have application to the mode of relief now under consideration, are very distinguishable from the present case.

In the case of *Daniel* v. *Mitchell* there was a written contract made between one of the defendants, who was considered as acting in the capacity of agent for the others, and the plaintiff, by which one party agreed to sell and the other to purchase the land. The purchase money also was paid, or secured to be paid, in performance of that contract to the defendants, although the conveyance of the land was made by a third person. The decree was, " that the contract of sale, and the conveyance of the premises, and the notes of the said Daniel thereupon," " ought to be set aside and held null and void." It also required the defendants to pay back to the plaintiff such portions of the purchase money, as they had respectively received ; but no one was held liable for any of the purchase money received by another person. This last clause is worthy

of especial notice, as it shows, that the Court did not consider itself authorized to grant further relief in a case of alleged fraud, than to restore to the injured party the purchase money received by each defendant, although the plaintiff might not thereby obtain full compensation for losses sustained.

The case of *Doggett* v. *Emerson,* was essentially the same in principle, although it does not appear, that there was any written contract between the parties for the sale and purchase of the land. The opinion indicates, that the decree must have been similar. It is said however in argument, that the master stated in his report, that one of the defendants had not received any part of the purchase money paid by the plaintiff; and that Mr. Justice Woodbury decided, that as he had been proved to have been guilty of actual fraud, he must be held liable for the purchase money paid to the other defendants. If so, it is not perceived, that he could have come to such a conclusion upon any other principle, than that of granting it as incidental to other relief; or than that stated by him in the case of *Warner* v. *Daniels,* that it is competent to give relief in such a case by the assessment of damages.

In both the other cases, of *Warner* v. *Daniels* and *Mason* v. *Crosby,* there appear to have been written contracts made between the parties, or some of them, for the sale and purchase of the lands. The elements necessary to enable the Court to rescind the contracts and conveyances, if in its judgment a proper case was made out, were before the Court.

Not so in this case. The Court cannot act upon, annul, or rescind, any conveyance, contract in writing, or security, made respecting the land, without attempting to affect the rights of persons not before it as parties. Nor can it decree the restoration of any of the purchase money paid by the plaintiff, without a like vain attempt. To decree, that the defendants shall repay to the plaintiff the amount, which he has paid, and receive a conveyance of the lands from him, is but another mode of making them responsible to make up to him all losses, which he has sustained by reason of their fraudulent conduct. If the Court can make such a decree upon any legal or sound

principle, it may do it in a less circuitous and less objectionable manner by adopting the second mode of relief proposed by a decree, that the defendants shall make compensation in damages for losses occasioned by their misconduct, being governed by the same rules, as a jury should be in an action on the case brought to recover damages occasioned by fraudulent representations.

This introduces an inquiry into the jurisdiction of a court of equity to entertain a case to give such relief, not as incidental or auxiliary to other relief granted to make it complete, but in a case where no other relief can be given. This will be a task of no ordinary delicacy and difficulty; for it will be in vain, if an attempt be made, to reconcile all the judicial opinions and judgments. Some of them must yield to the clearer principle or the better reason. A correct conclusion is most important and desirable; and if it can be attained even by a prolonged discussion of cases, legal minds may be willing to endure it with more patience.

To give relief in cases of fraud is one of the elementary grounds of the jurisdiction of a court of equity. An eminent chancellor has declared, that the court " had an undoubted jurisdiction to relieve against every species of fraud." *Chesterfield* v. *Jansen*, 2 Ves. 155. If this general language be understood to assert, that the jurisdiction extends to all possible cases, in which a Court of law may give relief, it must be received with some limitation. For the jurisdiction arose out of the inability of the common law tribunals to afford plain and adequate remedies in certain cases. The general rule has ever prevailed, and been recognized in the formal part of every bill, that a court of equity will not entertain jurisdiction, when the party appears to have a plain and adequate remedy at law. Story, (in 2 Eq. Com. § 794,) speaking of damages to be awarded for wrongs as well as for breaches of contract in certain cases, says, " the just foundation of equitable jurisdiction fails in all such cases, as there is a plain, complete and adequate remedy at law." This rule is especially to be regarded in this State, where the jurisdiction is conferred by statute

subject to that limitation. Ch. 96, § 10. Very numerous cases might be cited to prove, that it was but the adoption of an existing rule. Such was declared to be the effect of a similar clause in the act of Congress of September 24, 1789, to establish the Judicial Courts of the United States. *Boyce's Ex'rs, v. Grundy,* 3 Peters, 215. Mr. Justice Baldwin, however, regarded it as something more than declaratory of the existing law ; and as especially guarding and preserving the right of trial by jury from any infringement. *Baker* v. *Biddle,* 1 Bald. 403.

The Court has, undoubtedly, jurisdiction to give relief in cases of fraud, when the party has not a plain and adequate remedy at law. And it may vary its mode of relief to meet the ever varying fraudulent devices. And it may often in such cases find it necessary, through its own agency or by the aid of a jury, to assess damages and to decree payment of them. But these cases are exceptions to a more general rule, that there is a plain and adequate remedy at law for the recovery of damages occasioned by fraud or fraudulent representations, whether made concerning personal property or real estate, and whether the person making them, be or be not the vendor, or be or be not benefited thereby. *Pasley* v. *Freeman,* 3 T. R. 51 ; *Foster* v. *Charles,* 6 Bing. 396 ; S. C. 7 Bing. 105 ; *Crocker* v. *Lewis,* 3 Sum. 1 ; *Medbury* v. *Watson,* 6 Mctc. 246.

It has accordingly been decided, and the law may be considered now as conclusively settled, that if fraudulent representations have been made respecting personal property or personal rights, relief for injuries thereby occasioned can only be obtained by an action at law, and a court of equity will not entertain jurisdiction. *Clifford* v. *Brooke,* 13 Ves. 131 ; *Newham* v. *May,* 13 Price, 752 ; *Russel* v. *Clark's Ex'rs,* 7 Cranch, 89 ; *Hardwick* v. *Forbes,* 1 Bibb, 212 ; *Blackwell* v. *Oldham,* 4 Dana, 196.

When the only relief, which can in such cases be obtained, is the recovery of damages, it will rarely happen, that the elements for the estimation of them are so simple, clear, and free from conflicting testimony, and from embarrassment occasioned

by differences of opinion respecting the extent of the injury and the value of property, that the Court can, even by the aid of a master, properly estimate the damages without depriving a party of a right designed to be secured to him to have twelve men, having experience in the common transactions of life, determine both the extent of the injury and the measure of damages. This remark will apply with equal force to cases of fraud, whether the injury has been occasioned by misrepresentations respecting personal property and rights, or respecting real estate. If a court of equity should retain such a case only to make up an issue and send it to a jury for decision, it would be merely the instrument to accomplish, what it is the peculiar duty of a court of law to perform, thereby in effect admitting, that it was entertaining jurisdiction in a case, which did not properly appertain to it. The reasons for refusing to entertain jurisdiction, when there appears to be a plain and adequate remedy at law, are as cogent, and the principle is as clear, when damages are claimed to compensate an injury occasioned by fraudulent representations respecting real estate, as respecting personal property. If however the weight of authority strongly preponderates in favor of making a distinction, and of entertaining jurisdiction in the one case, and of refusing to do so in the other, it will be proper to yield to it.

There are many decided cases in which damages or compensation has been awarded, when the party did not appear to have any adequate remedy at law. There are many more cases, where damages have been awarded as incidental and auxiliary to other appropriate relief in equity, that such relief might be complete. This exercise of jurisdiction is legitimate and appropriate. For it would be an unsuitable and unworthy exercise of judicial power to require a party to multiply suits by resorting to two different tribunals to obtain a partial redress in each. This is not required by the rules and course of proceeding either in equity or at law.

Courts of equity may, it is believed, rightfully entertain jurisdiction and give relief by compensation or damages in the following classes of cases.

1. In cases of fraud and mistake, when there does not appear to be a plain and adequate remedy at law. *Dacre* v. *Gorges*, 2 Sim. & Stu. 454; *Thaxter* v. *Bradley*, 3 Shepl. 376; *Chapman* v. *Butler*, 9 Shepl. 191; *Sherwood* v. *Salmon*, 5 Day, 439; *Coe* v. *Turner*, 5 Conn. R. 86. And as incidental and auxiliary to other relief.

2. When relief against a forfeiture or penalty is sought and obtained. *Errington* v. *Aynesly*, 2 Bro. Ch. 341; *Eaton* v. *Lyons*, 3 Ves. 690; *Sanders* v. *Pope*, 12 Ves. 283; *Hill* v. *Barclay*, 16 Ves. 401; S. C. 18 Ves. 56; *Rolfe* v. *Harris*, 2 Price, 206, in note; *McAlpine* v. *Swift*, 1 Ball and Beat. 293; *White* v. *Warner*, 2 Meriv. 459; *Skinner* v. *Dayton*, 2 Johns. Ch. R. 526; S. C. under name of *Skinner* v. *White*, 17 Johns. R. 357.

3. When a contract or conveyance is properly set aside or rescinded under circumstances requiring, that some compensation should be made to one of the parties to adjust the equities and do complete justice. *Clinan* v. *Cooke*, 1 Sch. & Lef. 22; *King* v. *King*, 1 Myl. & Keene, 442; *Witherspoon* v. *Anderson's Ex'ors*, 3 Desau. 245; *Young* v. *Hopkins*, 6 Mon. 25; *Wickliffe* v. *Clay*, 1 Dana, 591; *Taylor* v. *Porter*, id. 423; *Williams* v. *Rogers*, 2 Dana, 375; *Lytel* v. *Breckinridge*, 3 J. J. Marsh. 670; *Bolware* v. *Craig*, Litt. Sel. Ca. 407.

4. When specific performance is sought and decreed in whole or in part. *Mortlock* v. *Buller*, 10 Ves. 292; *Dyer* v. *Hargrave*, id. 506; *Halsey* v. *Grant*, 13 Ves. 73; *Cann* v. *Cann*, 3 Simon, 447; *Carneal* v. *May*, 2 A. K. Marsh. 594; *McConnel's Heirs* v. *Dunlap*, Hard. 41; *Sims* v. *Lewis*, 5 Munf. 29; *Evans* v. *Kingsbury*, 2 Rand. 120. Relief is given in this mode in a variety of ways. As when the estate is subject to quit rents, or rent charges, or reliefs on descents, specific performance may be decreed against the purchaser, and compensation be made to him for them. *Esdaile* v. *Stephenson*, 1 Sim. & Stu. 122; *Cudden* v. *Cartwright*, 4 You. & Coll. 25. Compensation may also be allowed under such a decree for deterioration of the estate. *Ferguson* v. *Tadman*,

1. Sim. 530. And to a lessee, who cannot obtain a lease in exact conformity to his contract. *Hanbury* v. *Litchfield*, 2 Myl. & Keene, 629.

Vendors, who could not convey titles to the extent of their contracts, have been required to do so to the extent of their ability, and to make compensation for the deficiency. *Hill* v. *Buckley*, 17 Ves. 395; *Besant* v. *Richards*, 1 Tam. 509; *Horner* v. *Williams*, 1 Jones & Carey, 274; *Jones* v. *Shackleford*, 2 Bibb, 411. A vendor may be decreed to make compensation for rents and profits received since he ought to have conveyed. *Sibert* v. *Kelly*, 6 Mon. 674. So specific performance has been decreed against purchasers, who could obtain substantially, what they bargained for, with compensation for the deficiency. *Dreeve* v. *Hanson*, 6 Ves. 675; *Magennis* v. *Fallow*, 2 Moll. 561; *Weems* v. *Brewer*, 2 Har. & Gill, 390.

5. When specific performance ought to have been, and could have been decreed upon the state of facts existing, when the bill was filed, but cannot be decreed on a hearing of the cause, because the defendant, pending the suit, has voluntarily disenabled himself to make a conveyance. *Denton* v. *Stuart*, 1 Cox, 258; *Todd* v. *Gee*, 17 Ves. 279; *Woodcock* v. *Bennett*, 1 Cow. 755. The Court will not permit itself to be ousted, by fraud or contrivance of a jurisdiction rightfully and legally acquired, but will proceed against him who thus attempts to injure another and to impose upon the Court, and will, by the assessment of damages, compel him to make compensation for the injury. To do this is not to assume a jurisdiction, which does not legitimately belong to it, for the jurisdiction had already become rightfully vested and fixed there. If the much contested case of *Denton* v. *Stewart*, as Lord Eldon states in *Todd* v. *Gee*, was decided upon these principles, it would not seem to be liable to the strong disapprobation of it, expressed in other decided cases. In the case of *Warner* v. *Daniels*, Law. Rep. vol. 9, No. 4, Mr. Justice Woodbury is reported to have said, "some cases hold, that if either party, pending the proceedings, sells the property, so that he cannot convey, damages alone should

be given, though not in other cases." To allow a plaintiff, who was in a condition to rescind, when he filed his bill, to put it out of his power to do so pending the suit, and thus to elect to retain the fruits of the bargain, and to subject the other party to make compensation for any injury sustained according to the estimate to be made by a Court or jury, is to allow him to act inequitably, and to change his suit in effect into an action on the case for damages, thereby making the Court a mere instrument for the assessment of unliquidated damages. So far as the remark, if made, has application to a plaintiff in equity, it is believed, that it cannot be sustained by any decided case; and that it must have been inadvertently made.

6. When, by a bill for discovery and relief, the discovery sought is obtained, the Court having acquired jurisdiction of the case for the discovery, will retain it and give relief; and if necessary, by an assessment of damages. *Walmsley* v. *Child*, 1 Ves. 344; *Russell* v. *Clark's Ex.*, 7 Cranch, 89; *Middletown Bank* v. *Russ*, 3 Conn. R. 135; *Miller* v. *McCann*, 7 Paige, 451; *Sawyer* v. *Belcher*, 3 Edw. 117. It is insisted, that this case is within this rule. That a discovery of certain facts has been obtained, and that the Court should therefore retain the case and give relief by the assessment of damages, if necessary. This argument is founded on a misapprehension of the nature and character of a bill for discovery and relief. The word discovery is used in the books in connexion with bills of different classes or kinds. It is used in connexion with bills containing no averments to distinguish them as being bills of discovery. With reference to bills of this description, STORY says, "every original bill in equity may in truth be properly deemed a bill of discovery; for it seeks a disclosure of circumstances relative to the plaintiff's case." 2 Com. on Equity, § 689. The word is also used with reference to bills technically called bills of discovery, which do not pray for any relief; and seek a discovery only in aid of an action at law. This Court cannot entertain bills of this description, its jurisdiction for discovery being limited by statute, (c. 96, § 10) to cases, in which it can

give relief, and to other cases, in which the power to require a discovery is specially conferred. The word is also used with reference to bills properly denominated bills for discovery and relief. This class of bills is distinguished from that first alluded to, by containing certain statements, averments, and prayers. Such, in substance, as a statement of the facts, a discovery of which is desired ; an averment, that they rest within the knowledge of the defendant alone and are incapable of other proof; and that a discovery of them is material to enable the plaintiff to obtain relief. These allegations are not formal merely, but essential to enable defendants to put the point in issue, and to have a decision upon it, if desirable, whether the discovery sought is such, that it ought to be granted. And if the answer distinctly denies the facts thus definitely stated and sought to be discovered, the bill cannot be retained for relief on the ground of discovery, but must be dismissed. Story states, that the necessity of obtaining the discovery constitutes in such cases the sole ground of equity jurisdiction. 2 Com. on Eq. § 690. And "Hence, (he says) to maintain the jurisdiction as consequent on discovery, it is necessary in the first place to allege in the bill, that the facts are material to the plaintiff's case, and that the discovery of them by the defendant is indispensable as proof." 1 Com. on Eq. 3d ed. § 74. These doctrines are sustained by the cases cited by him and by other cases. *Duvalls* v. *Ross,* 2 Munf. 290 ; *Bass* v. *Bass,* 4 Hen. & Munf. 478 ; *Emerson* v. *Staton,* 3 Mon. 117 ; *Bullock* v. *Boyd,* 2 A. K. Marsh. 323 ; *Baker* v. *Biddle,* 1 Bald. 394. This bill is not therefore a bill for discovery and relief, and is not framed in such a manner as to enable the Court to grant relief consequent upon discovery. The plaintiff in his argument prays, that he may be permitted to amend his bill, if found to be necessary. The amendments necessary to bring the case within this rule for relief, could not be made without opening the whole case for new or amended answers. And if the facts alleged to be incapable of other proof were definitely stated, they might be denied by the answers to be of that character, or to have existence. And although relief may be, and usually

is given, consequent upon a discovery, it has been held, that such relief ought not to be given, when to obtain the verdict of a jury is the most appropriate proceeding to ascertain the extent of the relief. *Lynch* v. *Sumrall*, 1 A. K. Marsh. 469; *Handly's Ex'ors* v. *Fitzhugh*, id. 25. This rule applies very strongly to this case, if the only relief, which can be granted, is the assessment of damages.

7. When necessary to adjust the accounts, claims, and equities between a *cestui que trust* and a trustee, chargeable for delinquency or unfaithfulness. *Mucklow* v. *Fuller*, Jacob, 198; *Wilson* v. *Moore*, 1 Myl. & Keene, 337.

8. When necessary for the adjustment of equities between mortgagor and mortgagee. *Wragg* v. *Denham*, 2 You. & Coll. 117; *Pratt* v. *Law*, 9 Cranch, 456; *McCarthy* v. *Graham*, 8 Paige, 480.

9. When necessary for the liquidation and settlement of the concerns of a partnership, when one of the partners is chargeable for misconduct or fraud. *Twyford* v. *Trail*, 7 Simon, 92; *Stoughton* v. *Lynch*, 1 Johns. Ch. R. 467; *Hadfield* v. *Jameson*, 2 Munf. 53.

10. When necessary to give complete relief in cases of nuisance. *Hammond* v. *Fuller*, 1 Paige, 197.

The cases usually relied upon to maintain the position, that courts of equity have jurisdiction concurrent with courts of law, to assess and decree the payment of damages in cases of fraud, when there is a plain and adequate remedy at law, are yet to be examined, as well as those opposed to such a position. *Hollis* v. *Edwards* and *Deane* v. *Izard*, 1 Vernon, 159. The bills were for specific performance of verbal agreements for leases of houses; and they alleged, that the plaintiffs had paid the consideration, and expended money on the premises. The statute of frauds was pleaded. The lord keeper is reported to have said, " that he thought clearly, the bill would hold so far as to be restored the consideration." " That though the estate itself is void, yet possibly the agreement may subsist, so that a man may recover damages at law for the non-performance of it; and if so, he should not doubt to decree it in equity; and

therefore directed, that the plaintiff should declare at law upon the agreement, and the defendants were to admit it so as to bring that point for judgment at law; and then he would consider what further was to be done." As might be expected, the bills were afterward dismissed. Whether this be a correct report of the case, may be doubtful, both from intrinsic evidence and from the language of lord Loughborough, who speaks of "the usual inaccuracy of the cases in Vernon." *Parsons* v. *Thompson*, 1 H. Bl. 326. The impression, if entertained by the lord keeper, that an action at law might be maintained to recover damages, was incorrect. *Norton* v. *Preston*, 3 Shepl. 14. The remedy proposed was but a useless, expensive, and incongruous mode of proceeding, to make the action of a common law court effectual by a decree in chancery.

*Cud* v. *Rutter*, 1 P. Wms. 570. The bill was for the specific performance of an agreement to transfer South Sea stock. The plaintiff obtained a decree at the Rolls, which was reversed by Chancellor Parker, who is reported to have observed, " a court of equity ought not to execute any of these contracts, but to leave them to law, where the party is to recover damages." It is stated in a note to the case, that he directed, that the defendant should pay the plaintiff the difference of the stock. If he did so as directing a decree, and not as advisory merely, he must have acted contrary to his recorded opinion. However this may be, it is now settled, as has been already shown, that damages are not decreed in cases respecting personal property.

*Colt* v. *Nettervill*, 2 P. Wms. 303. The bill was also for specific performance of an agreement to transfer stock, to which there was a demurrer, which was overruled. The Chancellor is reported to have said, it may " appear to be attended with such circumstances, that may make it just to decree the defendant either to transfer the stock according to his express agreement, or at least to pay the difference." The last remark respecting the last case is equally applicable to this.

The *City of London* v. *Nash*, 3 Atk. 512. Bill for spe-

cific performance of an agreement in a building lease of some old houses made by the city to one Greaves, and by him assigned to the defendant, who had rebuilt two of the houses and repaired and put the others in good condition. Greaves had deceased. Lord Chancellor Hardwicke decided, that the covenants required, that all the houses should be rebuilt; and this was insisted upon by the plaintiffs. The defendants insisted, that they ought to be left to their action at law, if they had suffered damages. His lordship is reported to have said, " I shall not direct an action, because all proper parties are before me, the representative of the original lessee, and the assignee of the lease, but I shall order an issue." " The relief must be by way of inquiry of damages before a jury." The Court could have rightfully decreed a specific performance, and this clearly gave it jurisdiction. No suit at law could have been maintained against the personal representative of the lessee and the assignee; and the remedy at law against each separately might have been quite imperfect.

*Arnot* v. *Biscoe,* 1 Ves. 95. Biscoe as agent for the other defendant, Stephens, made a bargain with the plaintiff for the sale of a leasehold estate. Stephens signed the contract and received five hundred pounds in part payment. Before any conveyance the plaintiff discovered, that the estate had been encumbered by a mortgage, which had been foreclosed; and he brought his bill against defendants, alleging, that Biscoe made false representations respecting the title. The chancellor was of opinion, that the plaintiff might have his relief in a court of equity, if the facts were proved; and he sent the case to a jury to have the facts determined. It does not appear in the report, that the object sought by the bill was to have the contract rescinded as well as restoration of the money paid. It certainly was the appropriate course, and in such case there could be no doubt, that the Court had jurisdiction.

*Edwards* v. *Heather,* Sel. Ch. Ca. 3. Bill for a specific performance of an agreement for the sale of a copyhold estate. Defendant had entered upon the estate, cut down timber, stocked the land and acted as owner. There was proof, that

he was disordered in mind. The Lord Chancellor was of opinion, that the estate was greatly overvalued, that the cutting down of the timber was proof of folly, it being a forfeiture of title; but said it was a matter merely at law; and dismissed the bill.

*Forrest* v. *Elwes*, 4 Ves. 493. The contest arose out of a bond made by Forrest to transfer to Elwes old South Sea annuities. Forrest had deceased. " By the decree, made in this cause, the will of Commodore Forrest was established and the accounts were directed." One of the trustees of the will " was charged in respect of a loss sustained by the estate in consequence of consignment by his permission" to another trustee, who had become bankrupt. "An account was also directed to be taken of what was due from the testator, Forrest, in respect of the bond debt to Elwes." The only questions presented for decision and reported, arose out of exceptions taken to the master's report. A court of law could have no jurisdiction to charge one trustee for losses by his course of dealing with another; and the case appears to have been one, where the jurisdiction could not be questioned.

*Denton* v. *Stewart*, 1 Cox, 258, & 17 Ves. 275, note (b). As reported in the note by Sir Samuel Romilly, the bill was for specific performance of an agreement to assign a lease. The agreement was a parol one, but it had been partly executed. His counsel stated in their argument, that the defendant had since assigned the lease to another person for a valuable consideration and without notice; but this fact did not appear by the answer or proof. Lord Kenyon, as master of the Rolls, referred the case to a master, and decreed, that the defendant should pay to the plaintiff such damages, as should be thus ascertained. According to this report the case was strictly and appropriately one of equity jurisdiction; first, because it appertains to that jurisdiction only to give relief by enforcing such parol contracts, on the ground, that they have been partly executed; and secondly, because the case, as presented by bill, answer, and proof, required a decree of specific performance, or at least exhibited a case appropriate for one. It would

seem therefore, that the true objection to the case is not, that jurisdiction was improperly assumed, but that it was incorrectly and unusually exercised in the mode of giving relief, because the master of the rolls was induced, by the suggestions of counsel, to travel out of the record.

*Greenaway* v. *Adams*, 12 Ves. 395. The case was in substance like that of *Denton* v. *Stewart*, with this difference; the contract does not appear to have been a parol one. Sir William Grant expressed an opinion, that the decree awarding damages, in the case of *Denton* v. *Stewart*, was incorrect in principle; and that the party in such case, "must seek his remedy at law." He stated also, that as it had not been overruled, he felt bound to yield to its authority; and he made a like decree.

*Guillim* v. *Stone*, 14 Ves. 128. The bill was brought to have a contract for the purchase of an estate rescinded and for compensation for losses sustained by a failure to perform. Sir William Grant directed the contract to be delivered up, and did not decree compensation, stating that it was " more proper for an action." It would seem, as has been already stated under the third head of jurisdiction, that compensation might, upon correct principles, have been decreed in this case.

*Todd* v. *Gee*, 17 Ves. 274. Bill was for the specific performance of an agreement for the sale of an estate; and if that relief could not be granted, that compensation might be made. Lord Eldon commented upon the cases cited, and spoke of the case of *Denton* v. *Stewart*, as not according to the principles of the court, unless the defendant had made the assignment to another pending the suit; and stated, that it was " not according to the course of proceeding in equity," to file such a bill with a prayer in the alternative, with a view to damages, except in very special cases. That " the plaintiff must take that remedy, if he chooses it, at law." It was conceded by the chancellor and by counsel, that the jurisdiction to give relief in damages depended upon the prior cases of *Denton* v. *Stewart*, *Greenaway* v. *Adams*, and *Guillim* v. *Stone*.

There are two other cases in Vesey's Reports, which have

been occasionally cited to sustain the position now under consideration, but which, it is believed, can have no such effect.

*Evans* v. *Bicknell,* 6 Ves. 174. The bill was brought by a mortgagee against a mortgagor and a trustee of the mortgagor to have the mortgaged estate sold, and to have the trustee charged with the payment of any deficiency of the debt, on the ground, that he had allowed the mortgagor, whose wife was the *cestui que trust,* to have the title deeds, by which the plaintiff had been deceived respecting the extent of the mortgagor's title. Lord Eldon did not consider, that a case of fraud had been made out against the trustee, but offered to permit an issue to be made, that a jury might decide upon it. He expressed his disapprobation of the case of *Pasley* v. *Freeman,* which is now admitted to have been correctly decided; and stated, that he did not mean to say, that if an action would lie against the trustee at law, the court of equity would not maintain its jurisdiction. This was a case clearly within the equity jurisdiction; and with respect to the ground of fraud, his larger experience and more matured judgment were exhibited in *Todd* v. *Gee.*

*Burrowes* v. *Lock,* 10 Ves. 471. Bill against one, who was entitled under a will to a part of the testator's personal estate, and who assigned his interest to the plaintiff to secure a debt, and also against one, who was trustee, and who represented, that the assignor was entitled to a certain sum of money, although he knew, that he had before made an assignment of a tenth part of it. The master of the rolls, upon the authority of the last case decreed, that the trustee should pay over to the plaintiff the residue of the trust fund, after deducting the tenth part, which had before been assigned; and in case of the inability of the assignor to do it, that he should make good the deficiency.

*Clifford* v. *Brooke,* 13 Ves. 131. The bill alleged, that the defendant made fraudulent representations respecting the condition of a partnership, by which the plaintiff was induced to advance money to enable his brother to become a partner. The chancellor said, this case "answers the description given

by Mr. Richards, of the case of *Evans* v. *Bicknell*, viz. merely an action for money." "The law gives relief in all these cases of fraud." "But where the party can have an action, I will not give this relief on that ground."

*Blore* v. *Sutton*, 3 Mer. 247. Bill for specific performance of an alleged agreement for a lease from one, who had deceased. Plaintiff had entered into possession, and expended money in building. Sir William Grant decided, that the agreement was not binding, and that the plaintiff was not entitled to compensation, stating that the jurisdiction for such a purpose was doubtful.

*Newham* v. *May*, 13 Price, 752. Bill praying that the vendor might be decreed to make compensation to the purchaser of an estate for a difference between its value, as represented at the time of sale by a reference to the rent roll, and its actual value. Chief Baron Alexander, while speaking of the jurisdiction in such cases, said, "This, however, appears to me to be no more than a common case of fraud by means of misrepresentation, raising a dry question of damages, in effect a mere money demand."

*Jenkins* v. *Parkinson*, 2 Myl. & Keene, 5. In this case Lord Brougham speaks of the right to give relief by way of damages, and of the cases of *Denton* v. *Stewart* and *Greenaway* v. *Adams*, and says, "the current of all the previous authorities against it, to which Lord Eldon refers, in *Todd* v. *Gee*, may therefore be considered as restored, after a temporary and dubious interruption, and it may now be affirmed, that those two cases are no longer law."

*Sainsbury* v. *Jones*, 2 Beavan, 464. Bill for specific performance of an agreement for the sale of an estate made by Mr. Chitty, an attorney, representing himself to be the agent of the other defendants. The bill prayed, that in case it should appear, that the agreement could not be enforced for want of authority in the attorney to make it, or because Jones was a lunatic, that the attorney might be decreed to reimburse the deposit money received by him, and also moneys expended in building on the premises and to investigate the title. The

lunacy of Jones, and the want of authority in the attorney, were proved. Lord Langdale, as master of the rolls, said, "The question is, whether where a party having no sufficient authority enters into an agreement, the disappointed purchaser can come here for the recovery of damages, which he has been put to. No authority was produced, and I believe, that none exists, for such an interposition by this Court. Judges have always in modern times thought, that this was not the Court for the recovery of damages; and that the proper mode of obtaining relief was by an action at law; and it is reasonable, that it should be so."

Same case. 5 Myl. & Cr. 4. The case came before Lord Cottenham by appeal, who observed, the plaintiff "then knew, that he could not compel a specific performance of the contract, and having sought compensation for damages in a Court, which had not jurisdiction to award them, I think the decree of the master of the rolls dismissing the bill with costs as against Chitty, was correct."

The question under consideration would seem, therefore, to be settled and at rest in England, unless a distinction can be made between cases of relief, when the damages are occasioned by fraud, and when they are occasioned by breach of contract, there being an adequate remedy at law in each case. No such distinction appears to have been made in the decided cases under such circumstances; and it is not perceived, that there can be any in principle.

The question has arisen, and has been discussed in this country, occasioning difference of opinions.

*McFerran v. Taylor*, 3 Cranch, 270. Bill for specific performance of a bond made for the conveyance of lands. The case came before the Court by writ of error to the District Court for the District of Kentucky, which had made a decree for specific performance. Marshall C. J. delivered an opinion, in which he did not fully concur, and which states, "he sold that, which he cannot convey; and as he cannot execute his contract, he must answer in damages. He stated the grounds of his dissent, and while doing so, said, "the person claiming

damages in such a case should, I think, be left to his remedy at law."

*Russell* v. *Clark's Ex'rs*, 7 Cranch, 69. The bill was filed to obtain payment of certain bills of exchange alleged to have been indorsed by the plaintiff on the faith of two letters addressed to him by Clark and Nightingale, who were alleged to be liable to pay them on the ground, that the letters amounted to a guaranty, or that they were written with the fraudulent intent to be so understood, or that they contained a misrepresentation of the character and solidity of the drawers. In defence, it was contended, that the remedy at law was adequate and complete. This was denied, because, as was said, some of the facts were exclusively within the knowledge of the defendants; because there was a trust fund to be subjected to their claim; and because fraud was alleged and proved. Marshall C. J. in the opinion says, "On the question of fraud, the remedy at law is also complete; and no case is recollected, where a court of equity has afforded relief for an injury sustained by the fraud of a person, who is no party to a contract induced by that fraud."

*Pratt* v. *Law*, 9 Cranch, 456. This case is worthy of particular and careful examination and notice, because it has been supposed to be at variance with the doctrines of the last case, and because Story states, in a note under § 798, 2 Com. on Eq. that "the Supreme Court of the United States seem to have entertained no doubt, that though a specific performance might not be decreed, an issue of *quantum damnificatus* would be within the competency of the court." This case is there referred to as his authority for the remark; and it has been referred to recently by a member of that court, as an authority, that a court of equity may give relief in a case of fraud by the assessment of damages. There were, as the report states, four suits before the court, which were decided by one opinion, delivered by Mr. Justice Johnson, and which has usually been cited by the name of *Pratt* v. *Law*. Morris, Nicholson and Greenleaf, having agreed to sell to Thomas Law 2,400,000 square feet of land in the city of Washington, made

their bond on Dec. 3, 1794, in the penal sum of $100,000, to secure the performance of that agreement; and on Sept. 4, 1795, they conveyed to Law in mortgage, 857 lots and 3333 feet of land, to secure performance according to the bond and according to the agreement, as it had been subsequently varied by an arrangement between the parties.

Morris, Nicholson and Greenleaf made subsequently a mortgage to Duncanson, conveying portions of the same lands included in the mortgage to Law. After this, on June 26, 1797, they conveyed all their interests in lands in the city of Washington to Pratt and others. The first bill was filed by Pratt and others, praying that Duncanson and one Ward might be enjoined from selling the lots mortgaged to Duncanson, for certain reasons stated in the bill. The second suit was by the same against Law, and against William Campbell, " who had attached the equity of redemption of some of the squares, which were included in the mortgage to Law." The object of the bill was to compel Law to release portions of the lands mortgaged to him, to vacate releases made by him to Campbell, and to compel him to make a selection of the lands to be conveyed to him by Morris, Nicholson and Greenleaf. The third suit was by Law against Pratt and others, to have his mortgage, made to secure a conveyance of the 2,400,000 square feet, foreclosed for neglect to convey about 400,000 square feet. The fourth suit was by Campbell against Pratt and others, and Duncanson and Ward, to obtain a release of the mortgage made to Duncanson. It will be noticed, that neither of these bills was for specific performance. The Court decided, that there had been a partial failure to perform the agreement to convey to Law 2,400,000 square feet of land.

It was contended by the counsel in defence, in the suit by Law, for a foreclosure of his mortgage, that he ought then to take a decree for specific performance of the agreement to convey, or that he ought to receive compensation for the failure in part to perform, by an issue of *quantum damnificatus*, and that he ought not to obtain a decree of foreclosure for such a partial failure. In answer to this argument the

opinion says, " to obtain a specific performance is no object of Law's bill; it is incumbent on the opposite party, therefore, to show some ground of right to force such a decree upon him. But considering, as we do, that Law is not in fault, there can be no reason to decree a specific performance, when every thing shows, it would be productive of nothing but loss." — " An issue of *quantum damnificatus* it is certainly competent to this Court to order in this case; but it is not consistent with the equity practice to order it in any case, in which the Court can lay hold of a simple, equitable and precise rule to ascertain the amount, which it ought to decree." The Court then proceeds to assess the amount to be paid to Law to satisfy his mortgage and prevent a decree of foreclosure. And the decree is accordingly, that upon payment of the ascertained sum, the mortgage may be redeemed. The remarks of the Court respecting its right to frame an issue to ascertain the damages, and its right to ascertain them without it, were made not respecting its power to do so in a case, where specific performance was sought and could not be decreed, but respecting its right to do so to liquidate the amount to be paid to redeem a mortgage, and to adjust the equities between mortgagors and mortgagee. The remarks respecting specific performance were made by the Court only in reply to the counsel to resist such a proposed decree as wholly inappropriate to the case. The idea, that the case can be an authority for a decree to enforce the payment of damages in a case of specific performance or of fraud, appears to be an erroneous one, and founded upon a misapprehension, or upon an inattentive examination of the case. The Supreme Court, therefore, for aught that appears, holds an opinion in accordance with that of the Court of Chancery in England, respecting the right to award damages in such cases.

*Phillips* v. *Thompson*, 1 Johns. Ch. R. 132. Bill for specific performance of a parol contract to make compensation for the use and enjoyment of certain rights in a portion of the plaintiff's estate. Chancellor Kent held the contract to be invalid, retained the case, and awarded an issue of *quantum*

*damnificatus* on the authority of the cases of *Denton* v. *Stewart*, and *Greenaway* v. *Adams.* But he says, "I am apprehensive he would be remediless without the aid of this Court."

*Hatch* v. *Cobb*, 4 Johns. Ch. R. 559. Bill for the specific performance of an agreement for the sale of land. This was refused, as were also damages for the non-performance. The chancellor noticed the last and other cases, and said, "though equity in very special cases may possibly sustain a bill for damages on a breach of contract, it is clearly not the ordinary jurisdiction of the Court."

*Kempshall* v. *Stone*, 5 Johns. Ch. R. 193. Bill for a similar purpose with a like result. The chancellor said : — "The remedy is clear and perfect at law by an action upon the covenant; and if this Court is to sustain such a bill, I do not see, why it might not equally sustain one in every other case sounding in damages and cognizable at law."

*Bacon* v. *Brown*, 7 Johns. Ch. R. 194. Bill by a mortgagee, who had been induced to take a mortgage without information of the extent of the prior incumbrances by the alleged fraudulent practices of the mortgagor and of the attorney, who made out the mortgage deed. The estate had been sold by virtue of the unknown prior incumbrance, and had been purchased by the same attorney. The bill, among other matters, prayed, that the defendants might be required to release to the plaintiff their title acquired under that sale to the land, mortgaged to the plaintiff. The chancellor decreed a sale of the land subject to the prior incumbrances, notwithstanding it had been before, thus purchased, by the attorney, and that the attorney should be held responsible for any deficiency. This is clearly a case of equity jurisdiction, where relief was given in damages as incidental to other equitable relief granted to make such relief complete. And it is in no degree opposed to the opinion expressed in the two last cases.

*Woodcock* v. *Bennett*, 1 Cow. 755. In this case Mr. Justice Woodworth expressed an opinion, that "where the defendant has put it out of his power to perform the contract, the bill will be retained, and it will be referred to a master to assess

the damages." He referred to the case of *Denton* v. *Stewart*, as authority for the remark. It was but the expression of his own opinion, for the bill was dismissed.

*Sherwood* v. *Salmon*, 5 Day, 439. Bill alleged that the original plaintiff was induced to purchase lands by the fraudulent representations of the defendant. The Court had decreed, that the contract of sale and purchase should be rescinded and the purchase money restored. The case was presented by a writ of error to have that decree reversed. Swift J. delivered the opinion, and said, "Where a court of law can furnish adequate and complete relief, equity cannot interfere; but where this cannot be done at law, it is the proper province of equity to grant redress." The judgment was affirmed. The same doctrine is reasserted in *Coe* v. *Turner*, 5 Conn. R. 86.

*Sim's Adm'r* v. *Lewis, Ex'r*, 5 Munf. 29. Defendant's testator conveyed lands to Amistead, of whom the plaintiff's intestate purchased, and procured a bond from the vendor to make the title good. Bill alleged a failure of title, and sought satisfaction for it. The other defendants were the grantees of the vendor and of his widow and children in trust. The question of jurisdiction was presented, and the Court entertained jurisdiction only on the ground that the vendor had conveyed away his property in trust.

*Berry* v. *Van Winkle*, 1 Green's Ch. 269. Bill for specific performance of an agreement contained in a lease, that improvements made by the lessee should, at the end of the term, remain the property of the lessor upon his making a fair compensation for them. The Court entertained jurisdiction and carried the agreement into effect by an assessment of their value, and a decree of payment. The chancellor remarked, " In all cases resting in damages it is certainly more in accordance with our system of jurisprudence, that they should be ascertained at law, where a jury can pass upon them and the witnesses are seen and examined in open Court."

*Warner* v. *Daniels*, Law Rep. vol. 9, No. 4. Mr. Justice Woodbury is reported to have said, " in order to make the redress perfect, if third persons have since become interested in

the property, so that the fraudulent sale cannot be set aside and a reconveyance made of the whole, the relief for damages becomes necessary and proper, either in part or in full." The decided cases there referred to for this doctrine have been already noticed.

*Ferson* v. *Sanger*, a case not yet reported, but decided in the Circuit Court of the United States in the Maine District, since the decision of the last case. The opinion of the Court, both judges, as it is said, being present, was drawn and delivered by the District Judge. The question now under consideration was examined with his usual learning and ability, and the conclusion was, that "courts of equity will not entertain jurisdiction of a suit for damages arising out of a fraud, when damages are the sole object of the bill, for the remedy is complete at law."

*Bean* v. *Herrick*, 3 Fairf. 262. The report of the case shows, that there was an assessment of damages by a jury in a case in equity, as compensation for an injury occasioned by fraudulent representations inducing the purchase of land. The case upon its merits appears to have been correctly decided. The course adopted in sending the case to a jury to find all the facts, though not usual in modern times, may have been taken on the authority of *McFerran* v. *Taylor*, 3 Cranch, 270, where it is said to be the practice in Kentucky; and the same practice is said to have been continued there to this day. A similar course was pursued in the case of *Arnold* v. *Biscoe*, 1 Ves. 95; and in the case of *Evans* v. *Bicknell*, Lord Eldon offered to the plaintiff an issue of a similar kind. In the case of *Bean* v. *Herrick*, it is obvious that the court did no more, than it could have done in an action at law, except so far as it regulated the testimony to be exhibited to the jury. It does not appear, that any discovery was sought or obtained by the bill. The question of jurisdiction does not appear to have been raised or noticed, either by the counsel or by the court. The case would seem to belong to that class of cases not unfrequently found in the books, in which courts have inadvertently and erroneously entertained jurisdiction, when the point

was not raised or presented for consideration. It cannot be regarded as a decision or even as the expression of any opinion on the question under discussion, for it was not introduced to its consideration.

After this examination, suited to exhaust the patience both of writer and reader, the conclusion is irresistible both upon principle and upon authority, that the jurisdiction of a court of equity to give relief by the assessment of damages in the manner before stated, cannot be sustained.

The plaintiff insists, that the objection to the jurisdiction comes too late, according to the determination in the case of *Clark* v. *Flint*, 22 Pick. 237. The court in that case appears to have decided only, that it would not regard the objection, that the plaintiff had an adequate remedy at law, when made at that stage of the proceedings, " provided it be competent to grant relief, and have jurisdiction of the subject matter." The numerous cases already referred to in this discussion show, that the usual practice has been to make the objection on this very point at the hearing.

The bill is dismissed ; but under the circumstances of this case without prejudice, and with costs for defendants.