STEPHEN SHERWOOD *against* DANIEL SALMON:

#### IN ERROR.

THIS was a petition in chancery, brought, originally, by *Salmon* against *Sherwood*, complaining of fraud in the sale of certain lands in *Virginia*.

It was stated in the petition, that on the 1st of *December*, 1794, *Sherwood* applied to the petitioner and one *Samuel Beebe*, and proposed to sell to them 32,162 acres of land, in equal and undivided moieties, lying in the commonwealth of *Virginia*, being in nine entire parcels, and part of two other tracts or parcels, situate on the waters of *Tiger Valley* river, in part, and in part on the waters of *Big Elk* river, in the county of *Randolph*, and was surveyed for *Joseph* and *Thomas*

A court of chancery will grant relief, where the vendor of real estate, by false and fraudulent representations respecting its quality, induces another to purchase it, when the purchaser is not in a situation to discern the defect, by ordinary diligence, and where adequate remedy, at law, cannot be had.

*Pennell,* in the year 1786; and was represented on a plan, by the following numbers, *viz.* No. 3. of 3000 acres; No. 6. of 5000 acres; No. 8. of 5000 acres; and 1340 acres, being the east part of No. 9; these tracts having been surveyed for *Joseph Pennell;* No. 17. and 20., each containing 2000 acres, and No. 23. and 25., each containing 3000 acres; and 1322 acres, being the east part of No. 27.; and No. 28. of 3000 acres; and No. 29. of 2000 acres; these tracts having been surveyed for *Thomas Pennell;* also, one other tract of land surveyed for the respondent, of 900 acres, lying in *Randolph* county, and situate on *Big Elk* river, and designated on the plan by No. 26; also one other tract surveyed for the respondent, of 600 acres, situate in *Randolph* county, on *Laurel* creek; that the respondent further proposed to sell the several parcels of land above described, to *Beebe* and the petitioner, at the price of 25 cents per acre, and to execute his deed to the petitioner, for an equal undivided moiety thereof.

It was also stated, that the respondent, to induce the petitioner to purchase the land, affirmed and declared, that two thirds of the several tracts of land before mentioned, the last mentioned tract of 600 acres, excepted, was good, arable land, of an excellent quality; one third part thereof, being level *bottom* land, one third part, side-hill land, fine for pasturage, and the other third part, good timber land; that the whole thereof, except the tract of 600 acres, was well worth one dollar per acre; and that this tract consisted wholly of *bottom land,* fit for all agricultural purposes, without any waste or broken land, and was well worth two dollars per acre: And that, further, to induce the petitioner to purchase such land, the respondent exhibited a certain chart or map of the several parcels of land above described, thereby representing, that the same was intersected by large and beautiful rivers, and streams of water; which chart or map was made by the respondent, for the purpose of inducing the petitioner to believe the truth of his assertions in relation to the quality of the land: And further, that the respondent declared, that in case the petitioner should make the purchase, he would, thereby, make great gains and profits: And that

the petitioner, placing full confidence in the declarations and affirmations of the respondent, as above stated, and verily believing the same to be true, did, on the 20th of *December,* 1794, purchase of the respondent one equal undivided moiety of the several parcels of land before mentioned, and paid him therefor, the sum of 4020 dollars, 25 cents, being at the rate of 25 cents per acre ; and that, thereupon, the respondent conveyed to the petitioner an equal moiety of the land, by deed, executed by him alone, and attested by two subscribing witnesses only, and acknowledged before *Richard Varick,* then mayor of the city of *New-York,* the respondent then being an inhabitant of *Stratford,* in the state of *Connecticut.*

It was also stated, that the respondent, to induce the petitioner to receive and accept the deed, did affirm and declare, at the time of the execution and delivery thereof, that the same was, in all respects, well executed, acknowledged and authenticated, according to the laws of the commonwealth of *Virginia,* and that the petitioner would, thereby, become vested with an indefeasible estate in fee simple, in the land conveyed, and that the petitioner would hold the same, free from all incumbrances whatsoever.

It was then averred, that at the time of the execution and delivery of the deed, the respondent had a lawful wife, who was still living, and who did not join with her husband in the execution of the deed ; and that by the laws of *Virginia,* a *feme covert,* if she should survive her husband, was entitled to the right of dower in all the lands and tenements which he might have owned during the coverture ; and that the deed was not executed and authenticated according to the laws of *Virginia,* which require the attestation of three witnesses ; and also, that the acknowledgment, when the grantor does not reside in the commonwealth, should be taken before some court of law, or the mayor, or chief magistrate of any city, town, or corporation of the county where the grantor, at the time of the conveyance, may reside ; and that all these requirements were necessary to vest an indefeasible title in the petitioner.

It was also averred, that the representations and affirma-

VOL. V.                              F f f

tions of the respondent, relating to the quality and value of the land, and the authenticity of the deed, as before mentioned, were false and fraudulent, and were, by him, known to be such.

It was also averred, that the land conveyed to the petitioner, consisted, almost entirely, of rocks and inaccessible mountains, and was of little or no value.

The respondent, in his answer, denied the truth of the facts stated in the petition. The Superior Court found the facts to be true, and decreed, that the contract for the sale of the land, should be rescinded, and that upon the reconveyance of the land, the respondent should return the purchase money. To reverse this decree, the present writ of error was brought.

*R. M. Sherman* and *T. S. Williams*, for the plaintiff in error. The facts in this case are the same, as in the case of *Sherwood* v. *Salmon*, reported in 2 *Day's Rep.* 128. The petitioner claims the right of recovering back money which has been paid under a fraudulent contract.

It is clearly established in *Great-Britain*, that where there is a fraud in the sale of real estate, there may be a remedy in chancery. So here, it is now too late, after the decisions which have been had before our own courts, to say, that no action at law can be sustained, for fraud in the sale of land. But we are not called upon to contend with regard to these general principles : Nor do we claim, that where land is the subject of fraud, that there can be no remedy.

The defence in the present case, rests upon the principle, that where a party omits to use that degree of diligence, which the law requires of him, he is not entitled to relief. The petitioner, certainly, did not use that degree of diligence. A man must take due care of himself, before he can call upon a court of chancery to assist him. This principle is recognized in all the cases upon this subject. *Sugden,* 195.

It is claimed in behalf of the petitioner, that *caveat emptor* means only, that a man shall not shut his eyes, when he is about to purchase a piece of land. It is claimed also, that

the land in question, is made up of rocks and inaccessible mountains. A mountain is a visible object : A rock is also visible : And if the purchaser will but look, the objects may be seen. The distance of the land from the party, cannot vary the principle. If he chooses not to see with his own eyes, he may, if he will, see by those of his agent.

In the case of *Sherwood* v. *Salmon*, before mentioned, it was decided, that *Salmon* had no remedy at law. The correctness of that decision, is admitted. It is now contended, that he has no remedy in chancery. There was a distinction between the cases of *Sherwood* v. *Salmon* and *Bostwick* v. *Lewis*, reported in 1 *Day's Rep.* 250., and some other cases of this kind. In the latter case, third persons were employed, as decoys, for the purpose of defrauding the purchaser of land. In the former case, no such artifice was resorted to. In that case, there was no general allegation of fraud. Specific facts only, were alleged, and such facts only, could be proved.

A man is bound to use due diligence in all cases. And if decoys are employed for the purposes of deception, the necessity of diligence is not thereby removed. If the party is induced to believe, that he has exercised due diligence, he is excused ; otherwise, he is not excused. A court of chancery will, in such cases, grant relief, where a party uses due diligence ; but, if otherwise, he is without remedy.

*Daggett* and *N. Smith*, contra. The contract between the parties ought to be rescinded, on the ground that *Salmon* did not yield his assent to it ; or, in other words, the ground fails on which he yielded his assent. An action upon the case for a deceit, lies, whenever a man does any deceit, to the damage of another. In case of a mere mistake, there is, clearly, a remedy ; the contract is to be rescinded. It would be strange, indeed, if the party should be without remedy in a case of fraud. In the case of a sale, suppose the vendor to be ignorant of the defect, would there not be a remedy on the ground of a mistake ? But suppose the vendor to have knowledge of the defect, and that he designed to cheat, shall

Nov. 1813.

SHERWOOD
v.
SALMON.

the injured party be without remedy? *Sugden*, 195, 6, 7, 8. A court of chancery has power to restore the parties to their original condition. A court of law cannot rescind the contract between these parties. At most, it can only give damages for the fraud. This would not do complete justice to the parties.

The deed is defective. It is liable to be defeated, by creditors, and subsequent purchasers for a valuable consideration, without notice of the sale. The land is also subject to the right of dower. *Salmon* has, therefore, a right to a decree in chancery, if for no other reason, than that his title may be perfected.

The respondent objects to the decree of the Superior Court, on the broad ground, that there is no remedy, either at law, or in equity. It is claimed, that the case of *Sherwood* v. *Salmon*, goes this length. But this decision is not law. The opinion in that case, is supported by no authority in the *English* books; and none are to be found in our own.

The decisions in *Connecticut*, for many years, are in favour of the petitioner's claim. *Bostwick* v. *Lewis*, 1 *Day's Rep.* 250. *Norton* v. *Hatheway*, 1 *Day's Rep.* 255. *in nota. Pollard* v. *Lyman*, 1 *Day's Rep.* 156. The subject of decoys forms the only distinction between the case of *Sherwood* v. *Salmon*, and the cases just cited. But what is the reason of this distinction? The degree of fraud can make no difference as to the right of action. But in the case of *Sherwood* v. *Salmon*, evidence of decoys might have been received. Under the declaration in that case, any degree of fraud, every artifice, and every species of address, might have been proved.

The great question, in all cases of this description, is, whether a fraud has been committed? And it is perfectly immaterial, whether the fraud is consummated, by the agency of one or more persons, or whether one single artifice, or many devices are resorted to, to accomplish the design.

SWIFT, J. The petition states a misrepresentation in the quality of *Virginia* lands, and a deceptive conveyance, pray-

ing that the contract may be set aside ; and the question is, whether relief can be given in law, or equity ?

It is a principle of the common law, that an action on the case for a deceit, lies, where a man does any deceit to the damage of another ; that fraud without damage, and damage without fraud, give no cause of action ; but where these two do concur, there an action lies. This broad principle is founded in reason and justice, and comprehends deceits as well respecting lands as things personal ; as well respecting visible as invisible defects. There can be no doubt, the case under consideration, comes within the scope of this principle.

I think the case of *Lysney* v. *Selby*, 2 Ld. *Raym.* 1118. settles the principle applicable to this case. There the vendor, on the sale of certain houses, affirmed they were demised at the yearly rent of 68*l.*, and the purchaser, giving credit to the affirmation, closed the bargain, without making further enquiry, when in fact the rent was only 52*l.* 10*s.* Here it was in the power of the purchaser to have ascertained the fact ; he might have enquired of the tenant, or have called for the lease to examine, and a refusal to shew it, would have been as satisfactory as the production of it. But he made no such enquiry ; yet the vendor was holden liable. In giving his opinion, *Holt*, Ch. J. says, " If the vendor gives in a particular of the rents, and the vendee says he will trust him, and enquire no further, but rely upon his particular ; there if the particular be false, an action will lie ; but if the vendee will go and enquire farther, what the rents are, there it seems unreasonable he should have any action, though the particular be false, because he did not rely upon the particular." This clearly shews, that it is not the duty of the vendee to make enquiry, whether the representation of the vendor be true or not, though it is in his power to do it ; but he may rely on such representation, and if it be false, he is entitled to his remedy.

It is true, some of the judges in giving their opinion in that case, observe, that the rent was known only to the landlord and tenant, and they might have combined to misinform and cheat the purchaser ; but no such general presumption

Nov. 1813.

SHERWOOD
*v.*
SALMON.

could arise, and no reason could exist why the tenant should refuse to disclose the amount of the rent. Justice *Buller*, in remarking upon this case, in giving his opinion in the case of *Pasley* v. *Freeman, 3 Term Rep.* 51. says, " No collusion was there stated, nor does it appear that the tenant was ever asked a question about the rent, and yet the purchaser might have applied to him for information ; but the judgment proceeded wholly upon the ground, that the defendant knew what he asserted was false."

This case, then, fully establishes the doctrine, that a fraudulent misrepresentation, or false assertion, respecting a fact material to shew the value of the land, by which the purchaser is injured, will subject the seller to an action for the deceit, though it was in the power of the purchaser to ascertain, whether the representation were true or not.

Let us compare this with the present case. The defendant declared, that the land was good, arable, pasture and meadow land ; when he knew it was mountainous, and too steep for cultivation. The plaintiff having never seen the land, did not know that the representation was false. He might have viewed the land, or employed an agent for that purpose ; but as it was very distant from the residence of the parties, it would have been much more difficult than for the purchaser to have enquired of the tenant respecting the value of the rent. The plaintiff had so much confidence in the truth and integrity of the defendant, that he was willing to trust to his representation, and made no further enquiry. This was the same thing as to rely upon the particular, as mentioned by lord *Holt* ; and the fraud consisted in the defendant's affirming a fact to be true, which he knew to be false. Here was a false assertion respecting a fact material to shew the value of the land, by which the purchaser was defrauded. In point of principle, I can see no difference between this case, and that reported in lord *Raymond.*

It may be remarked, that the misrepresentation, or false assertion, must be of a material fact; and that the mere declaration of an opinion will not constitute an actionable fraud; as where the vendor declares it to be his opinion, that the

property is worth more than it really is. It is the duty of the seller, if he undertakes to make a representation, to disclose the truth to the purchaser, to enable him to form an opinion for himself; but the purchaser can have no right to rely on the opinion of the seller as to the value of the thing.

In the state of *Pennsylvania*, the following case has been decided. The action was for goods sold and delivered. The defence was, payment by the conveyance of land in that state; but the plaintiff insisted, that he had been imposed upon as to the quality of the land, and proved that the defendant represented it to be very valuable, and would, in two or three years, sell from two to six dollars an acre, when it was part of a mountain, so rude that it could not be cultivated, and so steep that it was inaccessible even to take off the wood, without incalculable labour and expence. The court charged the jury, that wherever there is a gross misrepresentation of facts, relating to the subject of a contract, the contract is fraudulent and void. *Cochran & al.* v. *Cummings,* 4 *Dall.* 250. Here the circumstance that the quality of the land was visible, did not justify a misrepresentation of it.

The same principle has been repeatedly recognized and established, in this state. The cases of *Bostwick* v. *Lewis,* 1 *Day's Rep.* 250., and *Hatheway* v. *Norton & Nichols, ibid.* 256. *in nota.,* were for false representations respecting the quality of the land, and were sustained. It has, however, been said, that these cases are distinguishable from the present, because they contain allegations of combination, and the making use of decoys. But there is no intimation that such a distinction was taken, nor is there any principle to warrant it : For this can relate only to the mode of practising the fraud, and can make no difference in the nature of it. The injury is precisely the same, whether the fraud be practised, by the single address of one, or the combined address of several. A greater absurdity can hardly be imagined, than to say, that a man cannot be liable for an injury arising from the commission of a fraud, by his own personal skill and cunning; but if he is obliged to call in the aid of another,

**Nov. 1813.**

SHERWOOD
*v.*
SALMON.

then he is liable for the same injury. The decisions, then, in this state, can be supported only on the ground, that a misrepresentation respecting the quality of land, by which a purchaser is induced to give for it more than its value, constitutes an actionable fraud, though it was in his power to discover such misrepresentation by inspection.

To these is opposed the later decision of *Sherwood* v. *Salmon*, 2 *Day's Rep.* 128., but in this there is no attempt to distinguish it from the preceding cases on account of fraudulent combination or decoys. It is decided on the general principle, that no actionable fraud can be committed by false affirmations respecting the quality of lands, because the quality is open to occular observation.

It is necessary to examine the grounds of this decision. It is said, " The law redresses only those who use due diligence to protect themselves, such diligence as prudent men ordinarily use." I apprehend no authority can be found to warrant the doctrine, that a man must use due diligence to prevent being defrauded, otherwise he shall be entitled to no remedy. The truth is, redress is most commonly wanted for injuries arising from frauds, which might have been prevented by due diligence. In *Rex* v. *Wheatly*, 2 *Burr.* 1125. the true rule of the common law is laid down. In such impositions and deceits where common prudence may guard persons against the suffering from them, the offence is not indictable, but the party is left to his civil remedy for the redress of the injury that has been done him ; but where false weights and measures are used, or false tokens produced, or a conspiracy, or such methods taken to cheat and deceive, as people cannot, by any ordinary prudence or care, guard against, there it is an indictable offence. If a man may sustain an action for fraud, where ordinary prudence and care could have protected him against it, *a fortiori* he may where due diligence would have protected him.

Again, it is said, " The quality of the land on which its value depends, and which is too various for a market standard, the purchaser can see if he will but look ; and the course that prudence has established, requires that he should look ;

if not with his own eyes, by those of an agent, or some one in whom he can reasonably place a confidence." It is questionable whether this remark is correct in point of fact ; for though, generally, where the land lies near the contracting parties, the purchaser looks to determine the quality ; yet it is well known, that in the *United States*, it has been a very common practice for prudent men to purchase lands lying at a distance from them, without ever seeing them, and have trusted to general information, or to the representation of agents, or the settlers themselves. Whether such conduct be consistent with the course of ordinary prudence, cannot now be a question ; since it is a clear position, that a man may recover damages for a fraud, though he did not exercise ordinary care and caution. But the real question is, whether the quality of land be not a visible matter, about which no fraud can be committed, and on account of which no action can be sustained, whether the purchaser exercised ordinary prudence or not.

It is conceded, that where the defect is visible, no false affirmation respecting it will subject the party to an action for fraud. But if any particular skill be necessary to ascertain the defect, as in the case of the blind horse ; if the seller make use of any artifice to conceal or disguise the defect ; or if the purchaser be blind, and the seller make a false affirmation respecting a defect visible to those who can see ; then, in such cases, a fraud can be committed. From these principles, I apprehend, the fair inference is, that the defect must not only be visible, but the purchaser must be in a situation to discern it, in order to avoid the consequences of misrepresentation. Suppose the property to be at a distance, so that the purchaser cannot see it, at the time of the sale ; then a false assertion respecting apparent defects will stand on the same footing as in the case of the man who wants skill to discern the blindness of the horse, or of the man who is blind himself; for he can no more discern the defect in one case than in the other. If, then, the defect be apparent, and the purchaser in a situation to discern it, by ordinary attention, it will be presumed he has knowledge of

VOL. V.       G g g

Nov. 1813.

SHERWOOD
*v.*
SALMON.

it, and no fraud can be practised upon him ; but if he be not in a situation to discern it, and relies on the word of the seller, then a false affirmation amounts to a fraud, for which the party injured is entitled to redress. In the case of lands, purchasers usually view to ascertain the quality ; but there is no law to prohibit them from purchasing without such view ; and where, from the remote situation of the land, or any other cause, a contract is made for the sale of land, without viewing it, there is the same reason that the seller should be responsible for a false affirmation respecting its quality, as for any other fraud.

Again, it is said, " And even should it be necessary to purchase land unseen, which can scarcely happen in a provident course of business, covenants may be inserted respecting quality, as well as seisin or title." And so may such covenants be inserted in all other cases ; and the consequence is, that no action of fraud ought ever to be sustained, because the parties can provide against it, by taking a warranty.

Again, it is said, " Whatever morality may require, it is too much for commerce to require, that the vendor should see for the purchaser. It is enough for him, in point of law, that he does not conceal the knowledge of secret defects, nor give a warranty, expressed or implied." This is an explicit avowal of the doctrine, that no fraud can be committed in the sale of land, by false assertions respecting its quality, for which an action will lie. For it is further said, " Whether lands be five or five hundred miles distant from the purchaser's residence, does not vary the requisition of due diligence, though it may the expence of complying with it. Land is not like a ship at sea; it has a known location, and may be approached." This is the promulgation of a new doctrine. It extends equally to cases where the fraud is effected by combination, or the intervention of decoys, or by the sole address of the vendor. This contradicts the former decisions in this state ; for in these cases, there was no concealment of secret defects, but merely false affirmations respecting the quality of the land. This is also repugnant to

the case of *Lysney* v. *Selby*, 2 Ld. *Raym.* 1118.; for in that case, there was no concealment of secret defects, but a false affirmation respecting the rent, by which the purchaser was induced to give more than the value of the houses.

The case, then, of *Sherwood* v. *Salmon*, is a departure from principle and precedent, and is not of binding authority.

The next question is, whether it is competent for a court of equity to give relief ?

Where a court of law can furnish adequate and complete relief, equity cannot interfere; but where this cannot be done at law, it is the proper province of equity to grant redress.

The relief prayed for in this case, is, that the contract should be rescinded; that the petitioner should reconvey the land; and the respondent refund the purchase money. This would place the parties in their former condition, and would do complete justice; for it would not be right that the petitioner should recover the purchase money, and retain the land; and it would be difficult to find a proper measure of damages, if the land be not reconveyed.

This, then, is a case proper for the peculiar jurisdiction of a court of chancery, to set aside the contract, and place the parties in their former condition.

In this opinion MITCHELL, Ch. J. and REEVE, TRUMBULL, BRAINARD and BALDWIN, Js. concurred.

EDMOND, SMITH and INGERSOLL, Js. gave no opinion, having been of counsel in a former stage of the controversy between these parties.

Judgment affirmed.