## THE BOARD OF WATER COMMISSIONERS OF THE CITY OF NEW LONDON *vs.* HERBERT A. ROBBINS ET ALS.

Second Judicial District, Norwich, October Term, 1909.
BALDWIN, C. J., HALL, PRENTICE, THAYER and RORABACK, Js.

The board of water commissioners of the city of New London, having decided to build a new reservoir and dam, prepared and issued, for the information and guidance of prospective bidders, a statement of the approximate amount of grubbing, excavation, filling, masonry, concrete, etc., required to complete the undertaking. The preparation of this statement was entrusted to the engineer of the board, who was a city official and had made an expert investigation of the situation. The amounts therein stated, of the various kinds of work which would be required, were relied upon by the defendants, who took the contract upon the basis of certain prices per unit of the different kinds of work. In an action by the water board to recover damages of the contractors for an alleged breach of their contract, the defendants pleaded in defense, and also by way of counterclaim, not only that they had been induced to make the contract through the plaintiffs' fraudulent representations, but that the latter in subsequent disregard of their statements and promises, and under cover of the general and indefinite language of the contract, sought to exact from the defendants a vastly greater amount and more expensive kind of work than they had contracted to furnish; and also that they had been wrongfully and in bad faith discharged by the plaintiffs. From a verdict and judgment in favor of the defendants for $8,000, the plaintiffs appealed. *Held:*—

1. That the statement issued by the board for the guidance of bidders must be regarded as a representation of fact rather than the expression of a mere opinion.
2. That it was open to the defendants to plead the invalidity of the written contract and also that they were induced to execute it through the plaintiffs' fraud.
3. That the fact that the prior negotiations were merged in the written contract did not prevent them from becoming the basis of a claim for fraud.
4. That having entrusted the active management and arrangement of the details of the work to its engineer, a city officer, the board itself could not escape responsibility upon the ground that its individual members had no actual knowledge of any fraudulent conduct or misrepresentations upon his part.
5. That the rule or adage that fraud is not to be presumed, also that

public officials are presumed to have acted honestly and fairly in the performance of their duties, had no probative force: that is, they really added nothing to the burden of proving fraud which the law cast upon the party who alleged it, but only reiterated, in a slightly different form, what was essentially the same obligation; and therefore it was sufficient, in the present case, to instruct the jury that the defendants assumed the burden of proving their charges of fraud, the existence of which was not to be found unless established by direct evidence, or as a natural and logical inference from facts and circumstances which were themselves directly established.

6. That the contract having been partly executed, it was open to the defendants—provided they acted promptly upon discovery of the fraud or within a reasonable time thereafter—either to repudiate the contract or to go on with it and sue in damages for the fraud.

7. That in view of the circumstances under which the statement to bidders was issued, its falsity was not to be excused upon the theory that the contractors could have detected that, had they seen fit to make a careful expert examination of the premises.

If one who has, and is known to have, the best means of knowledge in respect to a given subject, takes it upon himself to make representations relative thereto for the purpose of influencing another's action, and does influence it accordingly, the law will treat him guilty of a fraud if such representations are untrue, although he may not have known of their falsity.

Whether a party who has been induced by fraud to enter into a contract which is wholly executory, has an election of remedies upon discovery of the fraud, *quære*.

A demurrer which is addressed to an entire answer but only reaches one of two or more defenses embodied therein is for that reason properly overruled.

Irrelevant and evidential matters should be attacked by motion and not by demurrer.

The trial court may well use its own language in framing its instructions to the jury, and if these are correct, adapted to the issue and sufficient for the guidance of the jury, its duty is performed, notwithstanding other proper and appropriate instructions may have been suggested by counsel.

No instruction can properly be required which is not relevant to the evidence and claims of the parties.

A request to charge, which, while correct in a literal and limited sense, is not true in the broader signification in which it is apparently intended to be used for the jury's guidance, may properly be refused; as, also, one which has no material pertinence to the case.

An assignment of error directed to the charge should specify the particular statement in it which is challenged as unsound. It is not sufficient to quote a printed page or two of instructions containing independent propositions, and predicate error thereon.

It is the duty of the trial court, in charging the jury, to submit to them no issue foreign to the facts in evidence, nor any upon which no evidence has been offered which forms a reasonable basis for more than one conclusion.

Argued October 19th, 1909—decided January 4th, 1910.

ACTION to recover damages for the alleged breach of a bond given for the faithful performance of a contract to build a dam and reservoir for the plaintiff, brought to the Superior Court in New London County and tried to the jury before *Robinson, J.;* verdict and judgment for two of the defendants to recover $8,000 on their counterclaim and for the other defendant to recover its costs, from which the plaintiff appealed. *No error.*

The plaintiff, having determined to construct a dam and reservoir, having selected a site, and having caused a blueprint plan therefor to be prepared by or under the supervision of its engineer and superintendent, invited proposals for the execution of the work, to be presented within fifteen days after the date of invitation. The invitation stated that the amount of various kinds of work to be done was approximately 193,000 square yards grubbing, 2,000 cubic yards spoil, 5,000 cubic yards fill in reservoir bed, 23,000 cubic yards embankment, 375 cubic yards masonry, 2,000 cubic yards concrete, 230 cubic yards dry rubble, 6,000 cubic yards excavation, 5,000 square yards paving, and 10 tons of casting to set. At the same time copies of instructions for the information of prospective bidders were prepared and furnished to such bidders, and among them the defendants Robbins & Potter. This paper was entitled "Notice to Contractors." It contained sundry information as to the preparation and presentation of proposals. Among other things, it required that the bids should include all of the various kinds of work, and that they should be in the form of a stipulated price for each defined unit. It further provided that the estimate by which the bids would be tested would be based upon a table appended, which

was like that contained in the notice, except that 100 cubic yards of concrete and 2,500 square yards of plastering were added, and the items for excavation and paving were subdivided into classes as follows: Excavation, 5,000 cubic yards 0′ to 8′; 700 cubic yards 8′ to 16′; 200 cubic yards 16′ and below, and paving 800 square yards 15″; 4,200 square yards 12″. There were in all fifteen items. To this table was added the following: "The above estimated quantities are approximate, and the Board of Water Commissioners reserve the right to increase or diminish the same, as may be necessary in the judgment of the Engineer." Both the invitation and notice were signed "W. H. Richards, Engineer." Richards was the superintendent and engineer of the plaintiff.

Robbins & Potter were the successful bidders. Their proposal conformed to the terms of the notice, in that there was affixed to the statement of the quantity of each class of work, as set out in the "notice to contractors," the unit price at which it was proposed to do that work. A form of contract was thereupon prepared by the plaintiff, and submitted to the defendants for signature, and was signed by them July 30th, 1901. The bond in suit was executed and delivered at the same time. By the terms of the contract the contractors undertook to furnish all the labor and material, except as provided, and to do all the work therein specified, in accordance with the plans and directions furnished and to be furnished from time to time, and the connections therewith as shown on the drawings, and appurtenances of every kind complete, and of the dimensions, in the manner and under the conditions specified. No plan or drawing was referred to. Specifications were embodied in it, but it nowhere appears in the instrument what the project was upon which the work was to be done, or what the completion of the work was to bring into existence, save as its title designated it as "Contract and Specification for Dam and Reservoir located in the towns

of Montville and Salem." No other measure of the total of the work required, or means of measure, was contained in it. The compensation to be paid was fixed, as in the proposals, as an amount determined upon the basis of certain prices per unit of the various kinds of work, but there was no statement of the actual, estimated, or approximate number of any of these units as in the invitation and notice to contractors, proposals, or otherwise. There was the customary provision for an arbiter in cases of dispute, and Richards was made that arbiter. It was also provided that, if he was of the opinion that there was unnecessary delay in the prosecution of the work, he might notify the contractors in writing to that effect, and that if the contractors did not, within five days thereafter, take such measures as would in his judgment insure the satisfactory completion of the work, he might, with the consent of the board, notify the contractors to discontinue work under the contract, and thereafter cause the work to be completed, and charge the expense thus incurred to the contractors.

The contractors immediately began the work, and it was considerably advanced when, on October 30th, Richards notified them in writing that in his opinion there was unnecessary delay in it, and that, unless such measures as would in his judgment insure the satisfactory completion of it were taken within five days, they would be required to cease work. November 7th Richards, by and with the consent of the board, took action discontinuing work by the contractors, for the reasons outlined in the notice of October 30th.

The defenses and counterclaim described in the opinion set out, in substance, the above undisputed facts, except such as were averred in the complaint. Further than this these pleadings alleged, and the defendants offered evidence to prove, that the plaintiff, during the progress of the negotiations, represented to Robbins & Potter that the specification of quantities of the different kinds of work and

materials necessary to complete the construction of the dam and reservoir, which was embodied in the preliminary notice to contractors, had been made by its engineer, an expert competent to make them, and that they were approximately correct; that they represented that the contract as prepared and presented for signature did not differ, in its requirements as to the kinds and quantities of labor and materials called for, from the specification of the invitation and notice; that said representations were false, and the figures embodying the specification of quantities thus given grossly incorrect and misleading, in that the quantities of several of the classes of work specified as required to be done in the execution of the enterprise according to the plans, drawings, and directions of the engineer, as later furnished and given, were as follows: Spoil, 25,000 cubic yards, fill, 9,200 or more cubic yards, excavation, 8 to 16 feet, 2,000 or more cubic yards, excavation below 16 feet, 1,500 or more cubic yards, and concrete, 4,000 or more cubic yards; that the plaintiff furnished the figures thus incorrectly given, and made said representations concerning them, knowing that they were false, incorrect, and misleading, and with the intent thereby to induce Robbins & Potter to make a bid and proposal for the construction of the dam and reservoir, and to defraud them; that Robbins & Potter, being ignorant of the facts to which these figures and representations related, were misled thereby, and thereby induced to make their bid and proposal, which they otherwise would not have made, and to sign said contract, which otherwise they would not have signed; that in October, during the progress of the work, Robbins & Potter definitely ascertained that the plans, drawings, and directions of the engineer, as they were then presented, necessitated the doing of the amount of work last specified, of the several kinds stated; that they thereupon complained of the imposition which had been practiced upon them, notified the board that they did not hold

themselves obligated to perform such excess of work, but did not refuse, and never refused, to perform said work and furnish said materials in quantities approximating those stated in the notice and proposals; and that they thereafter continued to prosecute said work properly, and with reasonable rapidity, until compelled to desist by the action of Richards.

These pleadings also alleged, and the defendants claimed to have proved, that Richards, in giving his notice of October 30th, and in making his order of discontinuance of November 7th, acted in bad faith, well knowing that there was no unnecessary delay in the prosecution of the work, and with the intent to embarrass the defendants and render it impossible for them to continue with the work.

The defendants also offered evidence to prove, and claimed to have proved, the following facts: Richards was and for many years had occupied the official position, provided for by charter, of engineer and superintendent of the board. In that capacity there was entrusted to him by the plaintiff everything relating to maintenance and construction. The entire matter of the preparation of plans for the dam and reservoir, the determination of the methods of construction, and the execution of all the details involved in the procuring of proposals and the preparation of specifications and contract were committed to him. The quantities and kinds of work incident to the construction of an undertaking of the character of that in question will vary more or less according to the amount of expense the owner decides to incur, and it would have been practicable and not contrary to custom to build this dam and reservoir within the limitations as to quantities and kinds of work stated in the "notice to contractors." By the usage and custom among engineers and contractors the quantities of labor and materials as stated in said invitation and notice would, without further explanation, be taken as showing approximately the quantities of work

and materials to be required in constructing the completed
dam and reservoir contemplated by the plaintiff, and the
contractors would be justified in relying upon them as
such.  The maps referred to in the invitation to bidders
gave no information as to what was to be required in the
construction of the dam and reservoir, except to show the
proposed flow line of the reservoir, and what might be
gathered as to the required depth of the core wall of the
dam from the representations of the four test pits on said
maps.  By the usage and custom among engineers and
contractors the "test pits" as shown on such maps would
be taken as showing the depth which would be required for
the core wall, and the contractors would be justified, in the
absence of other statements or explanation, in assuming
that they would not be required to excavate for said core
wall to a greater depth than is indicated by said test pits.
For some months prior to the issuance of the invitation to
bidders, Richards, as the plaintiff's engineer, and his assist-
ant were engaged in making investigations, examinations,
and surveys, preparatory to the execution of the work, and
this fact was known to Potter.  The directions for excava-
tion for a foundation of the core wall carried it much below
where a proper foundation was found.

The plaintiff offered evidence to establish the allegations
of the complaint, and especially that the contractors vol-
untarily abandoned the work, while still incomplete, before
November 7th.  It also presented evidence to meet all the
defendants' charges of fraud, misrepresentation, or bad
faith on its part, or that of its representative, Richards,
and claimed to have established fair dealing and good-
faith action on the part of each.  It claimed to have shown
that Richards was a man of good reputation in his profes-
sion, and one in whom the board placed implicit confidence;
that Potter, one of the contractors, was notified that a per-
sonal examination of the site would be necessary before an
intelligent bid could be made; that, as Potter informed it,

he, before presenting his firm's proposal, personally visited and examined the site; that the members of the board were not possessed of technical knowledge, and had no knowledge of what would be required in the performance of the contract superior to that which Robbins & Potter would have acquired by a careful examination of the site and of the plans, specifications, proposed contract, invitation, and notice; that no one of them made any statement to Robbins & Potter implying such knowledge; and that the contractors continued work under the contract after they were fully aware that the work of certain kinds to be done was largely in excess of the amounts stated in the invitation and "notice to contractors."

Other pertinent facts are sufficiently stated in the opinion.

*Michael Kenealy* and *William J. Brennan,* for the appellant (plaintiff).

*Wallace S. Allis,* with whom was *Richard P. Freeman,* for the appellees (defendants).

PRENTICE, J. The plaintiff brings this action against the principals and surety upon a bond given for the faithful performance by the principals, Robbins & Potter, of a contract entered into by them for the construction of a dam and reservoir. Due performance of the terms of the contract on the part of the plaintiff, and its breach by the contractors, are alleged. The breach is alleged to have resulted from a notice from the contractors of their refusal to continue the work then in progress, an abandonment of it, and such unwarranted and unnecessary delay in the prosecution of the work as resulted in an order of discontinuance from the engineer in charge, agreeable to the provisions of the contract.

The defendants Robbins & Potter, in connection with certain special denials, set up, by way of special defense

and counterclaim, that the plaintiff was guilty of a fraud upon them, in that they were induced, by certain fraudulent representations made and contained in notices issued for the guidance and information of prospective bidders, and in other antecedent statements and negotiations, all relating to the character and amounts of the various kinds of work to be required to be done within the proposed contract, and within the contract as presented for signature, to sign the same; and in that, notwithstanding said representations, and in fraudulent disregard thereof, advantage was taken of the terms of said contract to require of the defendants a quantity of work of certain kinds grossly in excess of the amounts represented, so that the proportionate amounts of the different kinds of work were radically changed, and so that, by reason of this change and the increased difficulty and cost per unit which resulted, the burden thus wrongfully attempted to be imposed upon them was greatly augmented over what it would have been had the work been as represented; and also that they were, while engaged upon the work, unlawfully compelled to discontinue the further prosecution of it by the wrongful and bad-faith action of the plaintiff's agent, superintendent and engineer in charge, in taking advantage of a provision in the contract to compel such discontinuance, when no just reason therefor existed, as he well knew.

It will be observed from this analysis that while both the defense and counterclaim are in form single each is essentially double.  Each contains allegations which, entirely apart from others with which they are associated in the same pleading, constitute two entirely independent and complete defenses, or counterclaims, as the case may be. Those which bear upon the fraud which, it is claimed, gathers about the creation of the contract and its enforcement, form an independent group of facts, whose essence is deceit, upon which the defendants rely as a complete ground of defense and counterclaim, quite irrespective of

other allegations dealing with another disassociated matter. And the same is true of those averments which relate to the alleged unlawful termination of the contractors' connection with the enterprise. As it will be necessary to distinguish these two defenses and counterclaims in our discussion, we shall, for brevity's sake, refer to them as the first and second, respectively, adopting the order in which they have been outlined.

The defendant surety company filed an answer containing defenses identical in all respects with those of Robbins & Potter, but no counterclaim. As all the defenses and counterclaims of each group, determined by their subject-matter, rest upon precisely the same facts and involve precisely the same legal principles and considerations, we shall, for convenience sake, confine our discussion for the most part to the questions presented as bearing upon the counter-claims.

The reasons of appeal are numerous. They involve the action of the court in overruling the demurrer to the answer and counterclaim, its refusal to charge as requested, various portions of the charges as made, and the denial of a motion for a new trial for a verdict against evidence.

The plaintiff demurred to both the special defense and counterclaim, and numerous grounds of demurrer were assigned. Some of them ran to each pleading in its entirety, while others were addressed to paragraphs only. All those of the former class were properly overruled, if for no other reason than that none of them reached more than one of the two defenses or grounds of action embodied in the pleading, thus leaving a second defense or cause of action to support the pleading taken as a whole. These reasons, however, are all, save one possessing no importance, repeated as to certain paragraphs as a group, which paragraphs relate to the first defense and counterclaim. It was the apparent intention of the pleader to thus segregate the averments pertinent to the first special defense and counterclaim, and

to call in question their sufficiency as stating a valid defense or counterclaim. The segregation of averments as related to this purpose is by no means an accurate or complete one. There are allegations, not comprehended in the matter thus indicated as the subject of demurrer, which have a distinct bearing upon the question of the sufficiency of the entire pleading as having included within it a good defense and counterclaim of the character described. If we give effect to this branch of the demurrer just as it is framed, it must therefore fail for technical reasons. If, on the contrary, we give the plaintiff the benefit of that which was apparently intended, as we perhaps fairly may, we have presented the question whether sound reasons are advanced for holding that there are not sufficient allegations to support a good counterclaim and incidentally, therefore, a good defense.

It is urged in support of the demurrer that the alleged fraudulent representations antecedent to the execution of the contract are not averred to have related to material matters, that they concerned matters of opinion and judgment only, and purported to be mere estimates and approximations. The materiality of the matters concerning which the alleged representations were made is apparent. It is equally clear that they concerned matters susceptible of some measure of information on the part of those who made them, and that in form and substance they embodied an assertion of the possession of such information superior to that enjoyed by those to whom they were made. Upon the allegations, they were made as embodying the results of competent, expert engineering investigation, and stated to be approximately correct. Such representations are to be regarded as representations of fact, rather than of opinion. *Hedin* v. *Minneapolis M. & S. Institute*, 35 L. R. A. (Minn.) 417, note 430, 439; *Cowley* v. *Smyth*, 46 N. J. L. 380, 388. They were, in substance, assertions importing knowledge, and conveying information of fact. 20 Cyc. 17. It does

appear that the figures which expressed the alleged misrepresentation were furnished as estimates and approximations. But it is at the same time alleged that they were represented to be the result of expert engineering examination, and at least approximately accurate, whereas they did not, in fact, even remotely approach approximate correctness in the most liberal meaning of that term, were known to be false, inaccurate, and misleading, and were given to the defendant contractors with the intent that they should make use of them, as being approximately correct, in formulating their proposal, and in entering into a contract.

It is also contended that, as it is alleged that the instrument signed was not the contract between the parties, it is immaterial that Robbins & Potter were induced by deceit to execute it. We are unable to discover in the defendants' allegations any foundation for this claim. Furthermore, the conclusion stated would not follow, even if the statement of fact was correct. An attempt to avoid the obligation of the contract sued upon in one way does not preclude an attempt to accomplish that result in another.

There remain other grounds of demurrer, to the general effect that the defendants' case, in so far as it relies upon the alleged fraud now in question, must fail for the reason that it is not alleged that Robbins & Potter, upon discovering the deceit practiced upon them, rescinded the contract and abandoned the work, and that, on the contrary, it appears that they never ceased work under the contract until required to do so by the action of the engineer in charge. The question thus presented reappeared upon the trial, and it will be more convenient to discuss it in that connection. Suffice it now to say that the contention is not well made.

The demurrer also points out certain separate paragraphs of the special defense and counterclaim as containing either irrelevant or evidential matter only. If the objection was well taken, the plaintiff's proper remedy was by motion.

But the allegations of these paragraphs have a proper place in the defendants' story.

It is also charged that the fact that all prior agreements, proposals, negotiations and bids, became merged in the contract executed, furnishes a ground of demurrer. Such a merger would not prevent these, or any other matters antecedent to the execution of the contract, from becoming the foundation of a claim of fraud growing out of them.

Complaint is made in the appeal that each of fourteen requests to charge the jury, elaborately drawn and for the most part extended, were not complied with. It was not the duty of the court to incorporate these requests into its instructions, however correct the propositions of law or discriminating the observations of fact embodied therein. It pursued the proper course of framing its instructions in its own language, uncolored by partisanship. *McGarry* v. *Healey,* 78 Conn. 365, 367, 62 Atl. 671. Its duty was to give the jury such instructions as were correct in law, adapted to the issues, and sufficient for its guidance in the determination of these issues upon the evidence, and upon the ultimate facts as they might reasonably be found to be established by the evidence. *Hartford* v. *Champion,* 58 Conn. 268, 276, 20 Atl. 471; *McGarry* v. *Healey,* 78 Conn. 365, 367, 62 Atl. 671. If this was done, the court's duty was sufficiently performed, although it might be possible to suggest, and although counsel may have suggested, other observations which might with propriety have been addressed to the jury as entirely appropriate to the issues. We have, then, only to examine the requests to discover if there is contained in them any proposition of law which it was necessary to give to the jury, in order that the requirements of a sufficient charge might be met, concerning which proper and adequate instructions were not given.

The first of these requests was to the effect that Robbins & Potter would be precluded from claiming that the contract was terminated by reason of the bad-faith action of

the engineer if, within a reasonable time after they discovered that he was so prejudiced against them that he could not reasonably be depended upon to fairly decide any question which, under the contract, might be reserved for his opinion or judgment as an arbiter, they failed to inform the plaintiff of that fact, and the plaintiff was in ignorance of the fact. There is nothing in the statement of what the defendants claimed to have proved which called for such instructions. What they sought to establish was that the final act was one done in bad faith, and that is the only charge in the pleadings. There is nothing in either the pleadings or statement of facts claimed to have been proven which suggests that the contractors entertained a belief or suspicion that they could not trust the engineer to deal fairly with them as an arbiter, however exacting he, as the plaintiff's representative, may have been, or they have thought him to have been, in his demands as to what the contract called for, or however dilatory and annoying he may have been, or seemed to them to have been, in the performance of his duties as engineer, in supplying them with maps, drawings, and data, as it is claimed that he was.

Another request sought from the court instructions, in substance, that if the board obtained the services of a reputable engineer to prepare the notice to contractors, proposals, plans, specifications, and form of contract, and in good faith used them, when so prepared, in the manner in which they are ordinarily used in the execution of similar work, and no member of the board had any knowledge superior to that which the contractors would have obtained by a careful examination of the premises, and of the notices, proposals, plans, specifications, and form of contract, and no member of the board made any statement to the contractors implying such superior knowledge, then the action of the board in the matter of the contract would be regarded as in perfect good faith and free from fraud or misrepre-

sentation.   This request overlooks the important fact that
Richards was a public official.   By the provisions of the
city's charter he became, by virtue of his appointment
as the engineer and superintendent of the board, an integral
part of its organization as a public agency.   His acts in
this official relation were therefore in a peculiar sense those
of the plaintiff as a corporate entity, and his knowledge,
statements, and representations, in the performance of his
official duties, its knowledge, statements, and representa-
tions, so that it may not disassociate itself from him, and
claim immunity from the consequences of what he did within
the line of his duty.   Beyond this, he was the man to whom,
as the plaintiff itself asserted, the control, management,
and direction of the enterprise in question, and the arrange-
ment of all its details, were in fact entrusted.   As an agent
only, he, in all that he did, acted within the scope of his
agency, and the plaintiff is bound by his action, including
statements and representations.

The same failure to appreciate the consequences of Rich-
ards' relation to the plaintiff as a part of its official organ-
ization, enters into another ignored request, by force of
which the plaintiff sought protection from the consequences
of any bad faith on the part of the engineer in terminating
the contract, if it should be found that the board itself
acted in good faith in accepting his opinion, decision, and
certificate of termination.   It, apparently, also appears
again in a request to the effect that there could be no re-
covery upon the ground of fraud in the inception of the
contract if it should be found that the board itself acted
in good faith in the negotiations and transactions which
were preliminary to the execution of the contract.

The court was requested to tell the jury that if the con-
tract as executed represented the real contract between the
parties, as the court instructed that it did, it was immate-
rial whether or not the contractors were wrongfully pre-
vented from carrying it out.   The court might well have

failed to discover any reasonable basis for this request, and been excused from paying attention to it, since the idea which it was sought to convey thereby, as the brief informs us, was that it was immaterial whether or not there had been a breach of the contract as executed, since no breach of that contract by the prevention of its completion was alleged. We are unable to thus interpret the pleadings. Their allegations are that the discontinuance of all work on the reservoir was compelled by the wrongful act of the engineer.

The court was asked to charge that the law presumes that a person bidding upon work of the character of that covered by this contract is familiar with the kind and character of work upon which he bids, and that one contracting with him would be justified in acting upon that belief. While this might be true in a literal and limited sense, it is not true in the broader sense apparently intended for the jury's guidance. Familiarity with the kind and character of work incident to the construction of a dam and reservoir is a very different thing from such knowledge of the amount of work, or of the different kinds of work, which either the demands of the projectors as related to results satisfactory to them, or the conditions of the locality unrevealed to superficial view, might necessitate, as one might need to have in making estimates, proposals, or contracts therefor. It is idle to say that a contractor, however experienced in that business, must be presumed to know what he will be required to do in such case, beyond certain limits, without being informed, or that he is not entitled in preparing his estimates and proposals, and in entering into a contract, to rely upon information authoritatively given him to act upon, and that he accepts all such information at his peril. We have occasion to discuss this general subject more fully later on in connection with a closely related proposition. If it was the purpose of the request to convey no other information than its language, literally interpreted,

expresses, it was without material pertinence to the case. If, on the other hand, its purpose was to convey to the jury the other impression outlined, which it was calculated to convey, it was not a proper instruction to be addressed to them.

Complaint is made because the court did not tell the jury, as requested, that fraud was never to be presumed, but must be clearly proved by the party alleging it, and that the plaintiff, being an official body charged with the performance of governmental duties, would be presumed to have acted honestly and fairly in the performance of these duties. The court gave sufficient instructions as to these points when it said that the burden was upon the defendants to prove their charges of fraud, that the existence of fraud was not to be found unless established by direct evidence, or as an inference from facts and circumstances themselves directly established, which was clear, strong, natural, and logical, and the result of an open and visible connection between it and the facts from which it was drawn; and, while speaking of the conduct of the engineer, that fraud or bad faith was not to be presumed, but must be proved.

Presumptions like that appealed to have no probative force. They perform an office in the absence of evidence, so that one who has cast upon him the burden of proof as to a given proposition may be enabled to sustain that burden upon the strength of a presumption without the presentation of proof. When such a presumption is advanced in favor of one upon whom the burden of proof does not rest, it really adds nothing to the duty or burden of the other party, since the latter is already under the obligation to present proof in support of his contention, and the presumption only reiterates that obligation. *Vincent* v. *Mutual Reserve Fund Life Asso.*, 77 Conn. 281, 288, 58 Atl. 963; 4 Wigm. on Ev. § 2491.

The remaining requests, save one considered later, do not

demand attention.   Some of them were in substance com-
plied with; a consideration of others is involved in our
discussion of the demurrer; and one or two are concerned
with observations asked to be addressed to the jury con-
cerning the proof presented, or concerning their obvious
duty, as, for instance, that their conclusions should not be
influenced by feelings of sympathy for either of the parties.

Nine passages in the charge are recited in the assign-
ments of error as each containing error.   The claimed
errors are not otherwise pointed out.   The recital of these
passages occupies nine and one half pages of the printed
record; each of five of them is a page or more in length; and
each of two of them more than two pages.   While each of
the passages deals with related matters, most of them
embody a considerable number of quite independent prop-
ositions.   The record, therefore, leaves it altogether un-
certain what the particular errors claimed to have been
committed are.   Such assignments do not satisfy the
requirement of the statute (General Statutes, § 798), and
we would be justified in disregarding this branch of the
appeal for this reason.   *Griswold* v. *Guilford,* 75 Conn. 192,
193, 52 Atl. 742.   It is in our power to waive this irregu-
larity, however, and we will do so to the extent of con-
sidering the specific claims of error made in the brief of
counsel, in so far as substantial questions, not sufficiently
discussed already, are presented by them.

Most of these errors concern the charge as related to the
first ground of counterclaim and defense already outlined.
It is to be observed that the court defined this ground as
fraud, on the part of the plaintiff or its agents, whereby the
contractors were induced to enter into their contract.   A
closer analysis reveals that the real character of the fraud
of which the contractors complain is thus too narrowly
stated.   That fraud is one which resulted, not only from
the action of the plaintiff and its agents in inducing the
contractors to execute the contract which they did execute

by means of certain false and fraudulent representations, purporting to be based upon information, as to what its general and elastic language as related to the uncertain conditions involved in its subject-matter would require of them in the performance of the work undertaken, but also from the disregard of these representations, so falsely and fraudulently made, in subsequent action and requirements, under cover of the terms of the contract thus obtained. It is the advantage taken of the indefinite terms of the contract to exact what the contractors had been led to believe by authoritative statements and representations would not be exacted, that furnishes the real cause of complaint and fills out the measure of the alleged fraud. The plaintiff takes no exception to the court's too narrow statement, and naturally, since its cause was helped rather than harmed by it, and color was thereby given to certain of its claims which appear upon this appeal. It is, however, important to an intelligent consideration of some of the questions presented that a correct appreciation of the scope and character of the fraud which the defendants rely upon be borne in mind.

The plaintiff, in its requests, recurring to a claim presented in its demurrer, asked for instructions to the effect that the law requires the disaffirmance and repudiation of a contract, claimed to have been fraudulently induced, promptly upon discovery of the fraud, and that failure to make such disaffirmance and repudiation would result in a waiver of the fraud and a ratification of the contract. The court did not so charge, but told the jury that one who was led into a contract by fraud was privileged to repudiate the contract if, and only if, he proceeded to do so promptly upon his discovery of it, or within a reasonable time thereafter; but that he might pursue another course, to wit, continue in the execution of the contract, and seek his redress in an action to recover damages for the fraud. This statement of the law, as applicable to contracts partly exe-

cuted at the time of the discovery of the fraud, is a familiar one, and has had the approval of this court. 2 Cooley on Torts (3d Ed.) 962; *Yale Gas Stove Co.* v. *Wilcox*, 64 Conn. 101, 127, 29 Atl. 303; *Wilson* v. *Nichols*, 72 Conn. 173, 180, 43 Atl. 1052. Whether it is a correct statement as applicable to situations where the contract remains wholly executory at the time the fraud is discovered, we have no occasion to inquire, since the instructions were appropriate to the situation before the court. See *Kingman & Co.* v. *Stoddard*, 29 C. C. A. 413, 418. In connection with the general principle stated the court went on to say, in substance, that one might, after the discovery of the fraud, so conduct himself in affirmance of the contract that he would be held to have waived the fraud and lost his right to take advantage of it. But it was added that the court did not understand that such a situation was seriously claimed to exist in the case. The court was correct in its statement of principle, and justified, upon the facts before the jury, in dismissing that possible aspect of the case from their consideration. 2 Cooley on Torts (3d Ed.) 963; *Pryor* v. *Foster*, 130 N. Y. 171, 175, 29 N. E. 123; *St. John* v. *Hendrickson*, 81 Ind. 350, 352. It was its duty to submit no issue foreign to the facts in evidence, or upon which no evidence had been offered which formed a reasonable basis for more than one conclusion. *State* v. *Kelly*, 77 Conn. 266, 274, 58 Atl. 705.

That part of the charge wherein the jury were told what would operate as a fraud by representations, contained the following sentence: "If one, not knowing it is false, takes upon himself to make representations of fact to the other, on the faith of which the other acts, and the representations prove untrue, this would operate and be treated as a fraud, although his mistake is perfectly innocent." As a statement of a principle of general application this was not sufficiently guarded and precise. That, however, is not of consequence, if, as applied to the situation before the jury, it expressed the pertinent principle in such a way as to

furnish them a proper guide for their present purpose, and could not have misled them. All the representations before the jury, as the basis of the claimed fraud, were those claimed to have been made in relation to the approximate amount of work comprehended in the proposed project as contained in the printed notices and statements issued by the board and its engineer, and in other verbal statements corroborative of them. They were, therefore, as we have seen, representations so made that they carried with them the assertion of being made upon some basis of superior knowledge and information. Their purpose was to supply information to persons who were expected to act upon it in a business dealing with those who made them, and who were entitled to accept and act upon it as expressing what it purported to express, to wit, information having a basis in such superior knowledge. As applicable to such representations, it is true that if one takes it upon himself to make them for the purpose of influencing another's action, and they do influence his action, and the pretense of knowledge proves to be unfounded and the representations false, the result accomplished by such means will be regarded as tainted with fraud. "In matters susceptible of actual knowledge, if the party who has and is known to have the best means of knowledge, makes an affirmation contrary to the truth, in order to secure some benefit to himself, the law will treat him as stating that he knows that whereof he affirms, and so is guilty of a fraud, although he spoke in ignorance of the facts; because he asserts that he knows what he does not know." *Scholfield Gear & Pulley Co.* v. *Scholfield*, 71 Conn. 1, 19, 40 Atl. 1046. See also *Chase's Appeal*, 57 Conn. 236, 263 *et seq.*, 18 Atl. 96. "This rule is based upon the principle that the speaker is conscious either that he knows or does not know the truth of what he states, and that when, conscious of his ignorance, he assumes to have knowledge, he acts in bad faith and must be held to warrant the truth of his assertion,

and so is liable in an action of deceit." 20 Cyc. 27, note 92. The instruction criticised, even if we assume that its context did not more fully explain it, could not, therefore, have misled the jury to the plaintiff's harm.

Another passage dealing with the first counterclaim and defense, and concerned with the application of the doctrine of fraud, is criticised for the reason that the jury were not told that the representations must have related to a material fact; that they must have been such as were calculated to deceive a man of ordinary intelligence, and must have been believed. We have already seen that they related to matters inherently material, and that they were of such character and so made as to naturally lead to deception, if they were not what they pretended to be. The whole burden of the charge upon this point was that the representations, to be regarded as fraudulent, must have induced the execution of the contract through a reliance upon them.

In commenting upon the defendants' claim of deception arising from the representations, the court called the attention of the jury to the claim of the plaintiff that Robbins & Potter could not have been misled in view of the fact that one member of the firm visited the premises. Complaint is made that the intimation of the court was that the fact of deception was one to be determined in the light of the information then obtained, whereas, as it is said, they should have been told that it was to be determined in the light of what they might have discovered by a careful examination of the site. This proposition is to the effect that if Robbins & Potter, without personal investigation, acted upon the faith of the statements and representations made to them by the plaintiff, or its authorized representative, as to the kinds and the quantities of the various kinds of work comprehended in the scheme of construction as proposed, they did so at their peril, and that the plaintiff would be held to no responsibility for such statements and representations, although they were made for the express

purpose of their being acted upon by Robbins & Potter in a business dealing with it, and although they were false and misleading, if the latter fact would have been revealed by an investigation by competent men. The law sanctions no such proposition, as applicable to a situation like that before the jury. It is apparent that the facts involved in the statements and representations in question were such as not to be equally available to both parties, were not at hand or within the observation of Robbins & Potter, and involved investigation of conditions, study and computations for which expert technical knowledge was required, if not also a search of the minds and purposes of the members of the board. They were made by a party in a position to have, and who assumed to have, not only a superior knowledge, but also a knowledge which had a foundation in expert examination and study, and they were made for the purpose of being acted upon, and promptly acted upon. *Sherwood* v. *Salmon*, 5 Day 439; *Endsley* v. *Johns*, 120 Ill. 469, 481, 12 N. E. 247; *Savage* v. *Stevens*, 126 Mass. 207; *Redding* v. *Wright*, 49 Minn. 322, 330, 51 N. W. 1056.

Two portions of the charge, relating to the issue as to the unlawful termination of the contract by the plaintiff's engineer, are complained of, for the reason that the matter of the contractors' claimed abandonment of the work was ignored. There was no occasion for special reference to that subject in the passages referred to. The significance of a voluntary abandonment by the contractors before action taken by the engineer was not, however, by any means ignored. The entire charge proceeded upon the theory that proof of such an abandonment would establish a complete defense to the claim of unlawful termination, and in more than one place this fact was clearly brought out. It is inconceivable that the jury, after their instructions, or, for that matter, without them, could have been possessed of the notion that the contractors could be regarded as having been unlawfully prevented from con-

tinuing in the execution of the contract, if they had already voluntarily abandoned the work.

If the defendants established either one of their two defenses and the corresponding counterclaim, the verdict in their behalf was properly rendered. The court, therefore, could not grant the motion for a new trial, unless it was of the opinion that the jury could not have reasonably come to the conclusion, upon the evidence, that one of them was supported by proof. We cannot say that the court erred in not arriving at that opinion.

There is no error.

In this opinion the other judges concurred.