ARTHUR G. PETERSON ET AL. v. ANTHONY O. KRUPENEVICH

SUPERIOR COURT     HARTFORD COUNTY     FILE No. 85186

Memorandum filed April 16, 1951

*James N. Egan*, of Hartford, for the Plaintiffs.

*Joseph F. Ryter*, of Hartford, for the Defendant.

ALCORN, J. The plaintiffs seek to recover damages arising out of the alleged fraudulent representations of the defendant in connection with an exchange of real estate. The plaintiffs are

husband and wife. In 1948 they lived in a single-family house which they owned in Wethersfield. The wife at that time was employed as a waitress and was ambitious to have a business of her own.

The defendant owned a two-family house in Hartford the first floor of which had been remodeled by the addition of a brick veneer front and the installation of equipment for operation as a delicatessen and soda fountain. The defendant operated this business and lived in the rear of the first floor of the property, and rented the second floor to a tenant.

About September 10, 1948, the plaintiffs' daughter read an advertisement in the daily paper offering the defendant's property for sale. The property was not far from the plaintiff's home and they had been accustomed to pass through the neighborhood in bus or automobile for some six years.

It is obvious that the plaintiffs' eagerness to acquire a delicatessen business produced an unbusinesslike haste in their negotiations. If they had been more deliberate, their subsequent disappointment in the transaction which, in reality, is at the basis of this action could have been avoided. In response to the advertisement which her daughter had seen, the plaintiff wife went to the defendant's property during the day on Friday, September 10, 1948, and inquired of the defendant's wife if the property was for sale. The latter told her to come back and talk to the defendant. That same evening about 9:30, both plaintiffs came, with their son and daughter, and spent about an hour and a half talking to the defendant in the delicatessen. At that time the defendant set a price of $25,000 for the property, which the plaintiffs considered too high. They inquired about the property and the business and there was conversation to the effect that the business was good and that the defendant was sorry to sell it but found it necessary to do so because it was "too much for him." The defendant told them he could not show them the second floor because he could not disturb the tenant, and he could not show them the first floor living quarters because his mother was ill there. The plaintiffs did not insist upon seeing these parts of the premises. They were shown the business area, the kitchen, and a first-floor bedroom. They did not inquire about, or learn, the amount of the rent paid by the tenant. During this and the next visit they noted that very few customers came to the premises while they were there. The plaintiffs asked the defendant if he would consider their house in trade and he said that he would.

On the next day, Saturday, September 11, the defendant and his wife went to the plaintiffs' property and were shown through it. On the following Monday, September 13, the plaintiffs again visited the defendant's premises about 9:30 p. m. and stayed about two hours. On this visit they discussed the volume of defendant's business and what he told them made the plaintiff husband suspicious, so he asked to see the books. The defendant said he had no books and the plaintiffs let the matter drop there. They again discussed terms with the defendant and finally left with the proposition that they could acquire the real estate, delicatessen business, equipment, and the stock in trade in exchange for their house and $6500.

The next morning, Tuesday, September 14, the plaintiff wife went again to the defendant's premises, agreed to the terms, and they went to defendant's attorney, where a bond for deed was drawn and executed. The attorney was given no inventory of the stock or fixtures and the plaintiff wife merely told him that she was trading her house and $6500 in cash for the defendant's house, and the store with the stock, fixtures, and everything in it "as it stood."

On the next day, September 15, the plaintiffs moved into the defendant's premises to live and began to run the store. For the first few days the defendant's wife helped the plaintiff wife familiarize herself with the business and the defendant introduced her to merchants from whom she could buy supplies.

After the plaintiffs had occupied the premises for three days the deeds to complete the exchange were passed on September 18, 1948. Thereafter the plaintiffs ran the business until the following March. During this period the plaintiff wife came to the conclusion that the business was too confining and not sufficiently profitable. They also now complain that the roof leaked, the windows were loose, the inner doors sagged, and the house had settled some five or six inches on one side.

They allege in their complaint that they were induced to enter into the transaction in reliance upon the defendant's false representations "that said store was a new store and was in excellent condition and contained a stock in trade of $500.00 and that the fixtures contained therein were new and in good working order and that said store contained a good seltzer machine and that retail sales made in said store prior thereto had totalled between $350.00 and $500.00 weekly, and that said house was in good condition."

"Representations to be actionable as fraudulent must be statements of fact which are known to be untrue or made without belief in their truth or recklessly; they must be made for the purpose of inducing the other party to act on them; and he must in fact have been induced to act upon them to his injury." *Lowe* v. *Kohn,* 128 Conn. 45, 50; *Helming* v. *Kashak,* 122 Conn. 641, 642-643; *Nanos* v. *Harrison,* 97 Conn. 529, 532. The gravamen is a deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end designed. *Sallies* v. *Johnson,* 85 Conn. 77, 83.

The defendant had owned the premises since 1922, had put a new roof on the house in 1943, painted the exterior in 1945, built the store addition in 1946, and done other renovating in the interior. While the store remodeling evidently created something of an architectural monstrosity, that fact was readily apparent. The fixtures had been newly purchased when the store was built and the defendant was truthful in so informing the plaintiffs, nor can it be said he was otherwise in characterizing the store as "new." He told them that the stock in trade was worth approximately $500, and this is not shown to be untrue. Even if this representation as to the value of the stock in trade were shown to be untrue, it would not be actionable under the circumstances of this case. *Gustafson* v. *Rustemeyer,* 70 Conn. 125, 132.

The defendant told the plaintiffs that the house was in good condition, and that the store had a good seltzer machine. The defendant had never had any trouble with the seltzer machine and his statement concerning it was made with a belief in its truth. If the plaintiffs had established that they had relied upon the defendant's statement concerning the condition of the house it would have been pertinent to decide whether the representation that it was in "good condition" was an expression of opinion only or the representation of a material fact; *Colvin* v. *Delaney,* 101 Conn. 73, 77; *Scholfield Gear & Pulley Co.* v. *Scholfield,* 71 Conn. 1, 19; *Water Commissioners* v. *Robbins,* 82 Conn. 623, 644; and also whether the defects complained of were apparent to the plaintiffs and were such that they were in a position to discern them. *Sherwood* v. *Salmon,* 5 Day 439, 449; *Gallon* v. *Burns,* 92 Conn.39, 42; *Loverin* v. *Kuhne,* 94 Conn. 219, 224.

The plaintiffs, however, fail to establish that they were induced to enter into this transaction through a reliance upon the defendant's representations. Their eagerness to acquire this

property was such that their principal concern was to arrive at a price which they could meet. It is difficult to determine from their testimony exactly what statements were made in the bargaining. The locality, the exterior of the property, and all of the interior and its contents except the tenant's second-floor quarters and a limited portion of the first floor were open to their inspection even before the bond for deed was signed. They lived in the property and operated the business several days before the transaction was consummated. They raised no complaint during that interval and did not do so until several months later after the plaintiff wife became dissatisfied with running the business. They not only did not rely upon but, on the contrary, were suspicious of the defendant's statement as to the volume of the business from the outset.

Enter judgment for the defendant.